U.S. District Court
No. 95-089

MICHAEL NUTBROWN

v.

MOUNT CRANMORE, INC.

February 15, 1996

676

*Brennan, Caron, Lenehan & Iacopino*, of Manchester (*William E. Brennan* and *Timothy I. Robinson* on the brief, and *Kathleen A. Hickey*, orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Robert E. Murphy, Jr.* on the brief and orally), for the defendant.

JOHNSON, J. This case comes to us by way of certified State law questions from the United States District Court for the District of New Hampshire (*McAuliffe*, J.). *See* SUP. CT. R. 34. The plaintiff, Michael Nutbrown, sued the defendant, Mount Cranmore, Inc., for injuries he suffered while skiing at the defendant's resort. In his pleadings, he alleges that he "went off the trail and descended into the woods." According to his expert, he struck "either a rock, stumps, cut log or tree." The defendant moved for summary judgment, arguing in part that the plaintiff's action was barred by various provisions of RSA chapter 225-A. The plaintiff objected, and the district court certified the following questions to this court:

> 1. Whether RSA 225-[A]:25[,] I or RSA 225-[A]:24 violates Part I, Articles [2, 12, and 14] of the New Hampshire Constitution?

> 2. Is the conduct complained of in Plaintiff's Complaint contemplated and barred by NH RSA 225-A:25[,] I or RSA 225-[A]:24[?]

We find RSA 225-A:25, I (1989) inapplicable to this case. With respect to RSA 225-A:24 (1989), we answer the first question in the negative and the second question in the affirmative, except with regard to the plaintiff's allegation that the defendant failed to properly mark the ski trail.

## I. RSA 225-A:25, I

■ RSA 225-A:25, I, reads:

> Unless an operator of a passenger tramway is in violation of this chapter or the rules of the board, which violation is causal of the injury complained of, no action shall lie against any operator *by any passenger* or his representative; this prohibition shall not, however, prevent the maintenance of an action against an operator for negligent operation, construction or maintenance *of the passenger tramway itself.*

(Emphasis added.) By its plain language, this provision applies only to an action brought by a "passenger" or an action concerning a "passenger tramway." RSA 225-A:2, III (1989) defines "passenger" as

> any person including skiers *while* being transported or conveyed by a passenger tramway, or *while* waiting in the immediate vicinity for such transportation or conveyance, or *while* moving away from the disembarkation or unloading point of a passenger tramway to clear the way for the following passengers, or *while* in the act of boarding or embarking upon or disembarking from a passenger tramway.

(Emphasis added.) "A passenger tramway is a device used to transport passengers uphill on skis, or in cars on tracks or suspended in the air, by the use of steel cables, chains or belts or by ropes, and usually supported by trestles or towers with one or more spans." RSA 225-A:2, I (1989).

■ The plaintiff, at the time of his injury, did not fall within the statutory definition of a "passenger." Moreover, the plaintiff's action against the defendant does not allege that a "passenger tramway" was in any way involved in causing his injuries. Thus, RSA 225-A:25, I, does not apply to this lawsuit.

## II. RSA 225-A:24

### A. Right to a Remedy

The first certified question asks whether RSA 225-A:24 violates part I, articles 2, 12, and 14 of the New Hampshire Constitution. This case presents our first opportunity to interpret this statutory provision. *Cf. Adie v. Temple Mt. Ski Area*, 108 N.H. 480, 238 A.2d 738 (1968) (decided under prior law). We begin by examining it for any conflict with article 14's guarantee of a right to a remedy, "an important substantive right," *Carson v. Maurer*, 120 N.H. 925, 931-32, 424 A.2d 825, 830 (1980). Part I, article 14 reads:

> Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws.

We have interpreted this article to forbid the "abolition of the rights of a class of persons . . . to recover damages for their injuries in full . . . in the absence of provision of a satisfactory substitute." *Carson*, 120 N.H. at 943, 424 A.2d at 838 (quotation and emphasis omitted); *see also Petition of Abbott*, 139 N.H. 412, 416-17, 653 A.2d 1113, 1116 (1995); *Rooney v. Fireman's Fund Ins. Co.*, 138 N.H. 637, 642-43, 645 A.2d 52, 55-56 (1994); *Thompson v. Forest*, 136 N.H. 215, 218-19, 614 A.2d 1064, 1067 (1992). In evaluating the adequacy of substitute statutory benefits, we consider the "totality of benefits" afforded the injured party. *Thompson*, 136 N.H. at 218, 614 A.2d at 1067.

The portion of RSA 225-A:24 chiefly at issue is paragraph I, which reads as follows:

> It is hereby recognized that, *regardless of all safety measures which may be taken by the ski area operator*, skiing as a sport and the use of passenger tramways associated therewith may be hazardous to the skiers or passengers. Therefore:
>
> I. *Each person who participates in the sport of skiing accepts as a matter of law, the dangers inherent in the sport, and to that extent may not maintain an action against the operator for any injuries which result from such inherent risks, dangers, or hazards.* The categories of such risks, hazards or dangers which the skier or passenger assumes as a matter of law include but are not limited to the

following: variations in terrain, surface or subsurface snow or ice conditions; bare spots; rocks, trees, stumps and other forms of forest growth or debris; lift towers and components thereof (all of the foregoing whether above or below snow surface); pole lines and plainly marked or visible snow making equipment; collisions with other skiers or other persons or with any of the categories included in this paragraph.

(Emphasis added.) The remaining paragraphs of RSA 225-A:24 hold skiers and tramway passengers responsible for knowing the limits of their own abilities, RSA 225-A:24, II, IV, acting within those limits, RSA 225-A:24, III, and obeying basic safety rules, RSA 225-A:24, V. The portions of RSA 225-A:24, I, emphasized above echo the chapter's declaration of policy, RSA 225-A:1 (1989).

■ Significantly, the limitation on recovery found in RSA 225-A:24, I, applies only to injuries caused by "dangers inherent in the sport" of skiing. The statute does not purport to immunize a ski area operator for injuries caused by the operator's own negligent or intentional acts. *See Hiibschman v. City of Valdez*, 821 P.2d 1354, 1358 (Alaska 1991) (construing statute similar to New Hampshire's); *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1044 (Utah 1991) (same); *cf. Berniger v. Meadow Green-Wildcat Corp.*, 945 F.2d 4, 7 (1st Cir. 1991) (New Hampshire legislature "intended to supersede and replace a skier's common law remedies for risks inherent in the sport of skiing").

■ RSA 225-A:24, I, essentially embodies the doctrine of primary assumption of the risk. *See Dillworth v. Gambardella*, 970 F.2d 1113, 1118-20 (2d Cir. 1992) (interpreting statute similar to New Hampshire's); *Clover*, 808 P.2d at 1045-46 (same); *Estate of Frant v. Haystack Group, Inc.*, 641 A.2d 765, 769-70 (Vt. 1994) (same). This doctrine "is simply an alternative expression for the proposition that the defendant was not negligent, that is, there was no duty owed or there was no breach of an existing duty." *Clover*, 808 P.2d at 1046 (quotation omitted). Thus, we interpret the statute to mean that a ski area operator owes its patrons no duty to protect them from inherent risks of skiing. *See Estate of Frant*, 641 A.2d at 769. To the extent that a skier's injury is caused by an inherent risk of skiing, the skier may not recover from the ski area operator. An injury entirely caused by an inherent risk of skiing is not actionable, and a suit based on such an injury should be dismissed. *See generally Hiibschman*, 821 P.2d at 1363-64; *Scott v. Pacific West Mountain Resort*, 834 P.2d 6, 14 (Wash. 1992).

The doctrine of primary assumption of the risk, as a common law defense, has been rejected by this court. *See, e.g., Bolduc v. Crain*, 104 N.H. 163, 166-68, 181 A.2d 641, 643-45 (1962) (performing duty analysis). Thus, in enacting RSA 225-A:24, I, the legislature superseded the common law with respect to suits between skiers and ski area operators. *See also* RSA 215-A:34, II (1989) (persons operating off-highway recreational vehicles on private property assume the risk of dangers inherent to the sport); *Lorette v. Peter-Sam Inv. Properties*, 140 N.H. 208, 211–12, 665 A.2d 341, 343-44 (1995) (upholding RSA 215-A:34, II against equal protection challenge). The questions certified by the district court do not require us to decide whether this court's rejection of the doctrine of primary assumption of the risk as a common law defense has any continuing validity; we therefore leave this issue for another day. *See generally* W. KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 68, at 493-95 (5th ed. 1984).

██ ██ Returning to our examination of RSA chapter 225-A, we note that the chapter defines the responsibilities of ski area operators as well as skiers and tramway passengers. Operators are required to mark trails according to their level of difficulty, RSA 225-A:23, I, III (1989), supply skiers and passengers with maps and information about the trails, RSA 225-A:23, II (1989), and warn skiers concerning the use of ski jumps, RSA 225-A:23, IV (1989). Operators also must maintain liability insurance with limits of not less than $300,000 per accident. RSA 225-A:25, II (1989). These statutorily imposed responsibilities substantially benefit skiers and tramway passengers. Assuming, *arguendo*, that the legislature must provide a satisfactory substitute for the limitation on recovery found in RSA 225-A:24, I, these responsibilities provide such a substitute. *See Carson*, 120 N.H. at 943, 424 A.2d at 837-38. Accordingly, we hold that RSA 225-A:24 does not violate part I, article 14's guarantee of a right to a remedy.

## B. Equal Protection

██ We next determine whether RSA 225-A:24 violates the equal protection provisions of the New Hampshire Constitution. *See* N.H. CONST. pt. I, art. 2, 12, 14. We hold that it does not.

"The first question in an equal protection analysis is whether the State action in question treats similarly situated persons differently." *Opinion of the Justices (Limitation on Civil Actions)*, 137 N.H. 260, 265-66, 628 A.2d 1069, 1072 (1993) (quotation omitted). We agree with the plaintiff that RSA 225-A:24, I, does cause similarly situated persons — that is, participants in other sports — to be

treated differently. Except for users of off-highway recreational vehicles, *see* RSA 215-A:34, II, participants in other sports do not assume, as a matter of law, the dangers inherent in those sports. *Cf. Bolduc*, 104 N.H. at 166-68, 181 A.2d at 643-45 (defense of assumption of risk not available in common law negligence action; duty analysis performed). Thus, skiers may suffer a limitation on recovery not shared by other sports participants.

The second question in an equal protection analysis is whether the classification created by the statute is justifiable. The standard used to answer this question depends on the rights affected by the statute. *See LeClair v. LeClair*, 137 N.H. 213, 222-23, 624 A.2d 1350, 1355-56 (1993). In *Lorette*, we explained the appropriate standard to judge a statute limiting a plaintiff's right of recovery:

> The right to recover for one's injuries is not a fundamental right. It is, however, an important substantive right, and restrictions on the right to recover are subject to a more rigorous level of scrutiny than that employed under the rational basis test. We examine whether the statute is reasonable, not arbitrary, and differentiates in a manner having a fair and substantial relation to the object of the legislation.

*Lorette*, 140 N.H. at 211–12, 665 A.2d at 343-44 (citations and quotation omitted).

 The plaintiff's equal protection claim fails under this standard. As discussed above, RSA chapter 225-A imposes many responsibilities on ski area operators, all to the benefit of skiers. *See* RSA 225-A:23, :25, II. Most other sports participants do not enjoy such statutory protections. Consequently, we find the classification created by the statute neither unreasonable nor arbitrary. *See Lorette*, 140 N.H. at 212, 665 A.2d at 344. Moreover, the classification has "a fair and substantial relation to the object of the legislation." *Id.* One of the stated purposes of RSA chapter 225-A is "to define the primary areas of responsibility of skiers." RSA 225-A:1. The specific limitation on recovery found in RSA 225-A:24, I, has a fair and substantial relation to this object. Accordingly, we hold that RSA 225-A:24, I, does not violate the equal protection provisions of part I, articles 2, 12, and 14 of the New Hampshire Constitution.

### C. Statutory Bar

 We now address the second certified question as it pertains to RSA 225-A:24; that is, whether the statute bars the plaintiff's

action. The defendant pleaded the statute as a bar in its motion for summary judgment, and the plaintiff objected. As discussed above, RSA 225-A:24 bars an action by a skier or tramway passenger to the extent that the injuries were caused by an inherent risk of skiing. The plaintiff's allegation that the defendant violated RSA 225-A:23 by failing "to properly mark" the beginning of a trail does not involve an inherent risk of skiing. Rather, it asserts a statutory violation. Therefore, the portion of the plaintiff's writ alleging this violation is not barred by RSA 225-A:24.

We agree with the defendant that all of the plaintiff's other allegations of fault and causation were inherent risks of skiing and thus not actionable. The plaintiff was badly injured in his fall and does not remember the circumstances surrounding the accident. Henry Berger, a sports and recreation consultant hired by the plaintiff, reconstructed the accident as follows:

> [The plaintiff] was negotiating the Lower Alberg ski trail when he left the ski trail, hit an area of the right side of the trail without snow cover and fell down a gully/ravine striking either a rock, stumps, cut log or tree sustaining severe serious injury to his head and body.

Berger opined that the defendant "created and maintained a dangerous condition of the ski trails." He explained:

> A skier descending Lower Alberg ski trail in the area from its intersection with Bandit and Alberg ski trails toward the left hand curve and area Michael Nutbrown exited the trail *who for whatever reason experiences difficulty skiing*, would slide and be unavoidably directed by the groomed natural terrain as well as groomed snow cover on the ski trail toward the end of the snow cover, bare ground on the right side of the ski trail and be propelled into the open area and gully/ravine containing obstacles and hazards, the area of Michael Nutbrown's incident.

(Emphasis added.) Berger then cited several "failures" of the defendant and concluded that the plaintiff's injuries would not have occurred in their absence. These "failures" included inadequate construction and maintenance of the ski trails; inadequate warnings, markings, and directions; inadequate channeling of skiers; inadequate safety measures and risk reduction policies; inadequate inspection; and inadequate training, supervision, and management of personnel. The plaintiff's allegations track Berger's conclusions.

In essence, these allegations — except for those relating to the defendant's alleged failure to properly mark the beginning of the

trail — suggest only inherent risks of skiing as the likely causes of the plaintiff's injuries. RSA 225-A:24, I, specifies inherent risks of skiing as follows:

> variations in terrain, surface or subsurface snow or ice conditions; bare spots; rocks, trees, stumps and other forms of forest growth or debris; lift towers and components thereof (all of the foregoing whether above or below snow surface); pole lines and plainly marked or visible snow making equipment; collisions with other skiers or other persons or with any of the categories included in this paragraph.

Many of these, such as "variations in terrain" and "surface or subsurface snow or ice conditions," explain the plaintiff's accident, as described by Berger.

■■ ■■ The enumerated risks, however, are not the only ones assumed by the skier; the statute states that assumed risks "include *but are not limited to*" those set forth in the quoted provision. RSA 225-A:24, I (emphasis added). Even the most generous reading of the plaintiff's pleadings reveals the chief cause of his injuries to be an unenumerated, yet quintessential risk of skiing: that a skier might lose control and ski off the trail. By participating in the sport of skiing, a skier assumes this inherent risk and may not recover against a ski area operator for resulting injuries. RSA 225-A:24, I. Ski area operators must comply with the requirements of RSA 225-A:23, but are not required to erect safety barricades or otherwise specifically guard against this danger. *Cf. Fetzner v. Jiminy Peak, The Mountain Resort*, No. 94WAD16, 1995 WL 263916, at *2 (Mass. App. Div. May 1, 1995) (slipping on ice held inherent risk of skiing); *Schmitz v. Cannonsburg Skiing Corp.*, 428 N.W.2d 742, 744 (Mich. Ct. App. 1988) (colliding with a tree held inherent risk of skiing). Except with regard to the plaintiff's allegation that the defendant failed to properly mark the ski trail, we answer the second certified question in the affirmative as it pertains to RSA 225-A:24.

*Remanded.*

BRODERICK, J., did not sit; the others concurred.