Merrimack
No. 95-220

## JOSEPH B. MAHAN, III & a.

v.

## NEW HAMPSHIRE DEPARTMENT OF ADMINISTRATIVE SERVICES

April 21, 1997

*Hall, Morse, Anderson, Miller & Spinella, P.C.*, of Concord (*Douglas J. Miller* on the brief and orally), for the plaintiffs.

*Hall, Hess, Kenison, Stewart, Murphy & Keefe, P.A.*, of Manchester (*Frank E. Kenison* on the brief and orally), for the defendant.

BROCK, C.J. The plaintiffs, Joseph and Irene Mahan, sued the defendant, New Hampshire Department of Administrative Services (State), for negligence after Joseph Mahan (hereinafter the plaintiff) was seriously injured while working in a State-owned building. After the Superior Court (*McGuire*, J.) denied the State's motion for summary judgment, a jury returned a verdict in favor of the

plaintiff. The State argues that sovereign immunity bars the plaintiff's claims, and that the court erred in allowing reference at trial to RSA 277:2 (1987) and related labor regulations. We affirm.

The following facts are undisputed. In October 1990, the plaintiff was employed by ServiceMaster Contract Maintenance, Inc. (ServiceMaster), which provided maintenance services in some State office buildings. The plaintiff seriously injured the index finger of his right hand while performing janitorial services in a State-owned building, the Health and Human Services Building in Concord. His injury occurred as he used a hoist owned and supplied by the State to lift and move a metal desk owned by the State. The plaintiff sued the State alleging negligence as well as the violation of mandatory duties imposed by RSA 277:2.

The State moved for summary judgment shortly before trial, see RSA 491:8-a (1983), arguing that the discretionary function exception to the State's limited waiver of sovereign immunity, RSA 541-B:19, I(c) (Supp. 1996), barred the plaintiff's case under the undisputed facts. The trial court did not rule on the motion until the close of the plaintiff's case at trial, by which time the State also had moved for a directed verdict. The trial court denied both motions, allowing the State to present its case. The jury returned a verdict in favor of the plaintiff. This appeal followed.

The State argues that it was entitled to judgment as a matter of law on the basis of the pleadings and affidavits before the superior court at the time the State made its summary judgment motion. The plaintiff urges us to review the entire record, given that the summary judgment motion was made on the eve of trial and that the ruling was not made until during trial. He further urges us to decline to consider the State's appeal for failure to provide the entire record for our review. Because we conclude, on the basis of the materials provided to us, that the State's motion for summary judgment properly was denied, we need not decide whether the entire record should have been provided for our review.

When reviewing the denial of a motion for summary judgment, we consider the pleadings and any accompanying affidavits, and all proper inferences drawn from them, in the light most favorable to the nonmoving party. *Dwire v. Sullivan*, 138 N.H. 428, 430, 642 A.2d 1359, 1360 (1994). Summary judgment must be granted when there is no genuine issue of material fact to be decided, and the moving party is entitled to judgment as a matter of law. RSA 491:8-a, III (1983).

*I. Sovereign Immunity*

Pursuant to the doctrine of sovereign immunity, the State may not be sued in State court without its consent. *Tilton v. Dougherty*, 126 N.H. 294, 297, 493 A.2d 442, 444 (1985). The legislature waived the State's sovereign immunity when it enacted RSA chapter 541-B, subject to several exceptions. *See* RSA 541-B:19; *LaRoche, Adm'r v. Doe*, 134 N.H. 562, 566-67, 594 A.2d 1297, 1300-01 (1991). These exceptions are similar to the judicially recognized exceptions to the abrogation of municipal immunity, and we analyze them under similar standards. *Compare Gardner v. City of Concord*, 137 N.H. 253, 257, 624 A.2d 1337, 1339 (1993) (describing discretionary function exception) *with DiFruscia v. N.H. Dept. of Pub. Works & Highways*, 136 N.H. 202, 205, 612 A.2d 1326, 1328 (1992) (same).

■ The "discretionary function" exception retains governmental immunity for conduct that can be characterized as "an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Bergeron v. City of Manchester*, 140 N.H. 417, 421, 666 A.2d 982, 984 (1995) (quotation omitted); *see DiFruscia*, 136 N.H. at 205, 612 A.2d at 1328. We have described this exception and its characteristic high degree of official judgment or discretion by reference to whether the conduct involved "weighing alternatives and making choices with respect to public policy and planning." *DiFruscia*, 136 N.H. at 205, 612 A.2d at 1328 (quotation omitted); *see Bergeron*, 140 N.H. at 421, 666 A.2d at 984.

> We have declined to draw a bright line between discretionary planning and the ministerial implementation of plans, however. Rather, we have stated that it would be possible for workers to implement a faulty design or plan, for which no tort liability should result, but that if, on the other hand, workers negligently follow or fail to follow an established plan or standards, and injuries result, then a government entity could be subject to tort liability.

*Bergeron*, 140 N.H. at 421, 666 A.2d at 985 (quotations and brackets omitted); *see Goss v. City of Manchester*, 140 N.H. 449, 451, 669 A.2d 785, 786 (1995).

The retention of sovereign and municipal immunity for discretionary functions stems from the separation of powers doctrine. *Gardner*, 137 N.H. at 256, 624 A.2d at 1339; *see Peavler v. Monroe Cty. Bd. of Com'rs*, 528 N.E.2d 40, 44 (Ind. 1988). This exception reflects judicial reluctance to evaluate the wisdom of an executive or legislative choice of public policy goals or the means to accomplish

those goals; for a jury or court to determine "the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations." *Gardner*, 137 N.H. at 256, 624 A.2d at 1339 (quotation and brackets omitted); *see also Rockhouse Mt. Property Owners Assoc. v. Town of Conway*, 127 N.H. 593, 600, 503 A.2d 1385, 1389 (1986). "[C]ertain essential, fundamental activities of government must remain immune from tort liability so that our government can govern." *Neumann v. Davis Water and Waste, Inc.*, 433 So. 2d 559, 562 (Fla. Ct. App. 1983).

With these principles in mind, we examine "the broad spectrum of official actions that can be called discretionary, [to determine the] point at which the exercise of discretion is no longer characterized by a choice of policy and becomes simply a choice of means to implement policy." *Opinion of the Justices*, 126 N.H. 554, 563, 493 A.2d 1182, 1189 (1985); *see, e.g., Bergeron*, 140 N.H. at 422, 666 A.2d at 985. We distinguish policy decisions involving the consideration of competing economic, social, and political factors from operational or ministerial decisions required to implement the policy decisions. *See Bergeron*, 140 N.H. at 422, 666 A.2d at 984; *Peavler*, 528 N.E.2d at 45 (question not simply whether judgment exercised, but whether judgment required consideration of policy).

The plaintiff presents RSA 277:2 and certain labor regulations, *see* N.H. ADMIN. RULES, Lab 1403.01, 1403.32, as evidence of the "standard" that the State negligently failed to meet. *See Bergeron*, 140 N.H. at 421, 666 A.2d at 985. RSA 277:2 imposes upon the State the responsibility of providing for workplace safety and proper protection of employees entitled to the protections of RSA chapter 277. *See* RSA 277:1-b, I, :2 (1987).

■ Pursuant to RSA 277:16 (1987 & Supp. 1996), the department of labor has enacted regulations relating to the safety and health of State employees, some of which were cited by the plaintiff in his writ. *See* N.H. ADMIN. RULES, Lab 1401.01. Labor Regulation 1403.01 mirrors the general requirement of RSA 277:2 that the State provide a safe workplace for its employees. N.H. ADMIN. RULES, Lab 1403.01. Some rules within this part of the labor regulations establish particular inspection requirements for particular activities and particular types of machinery. *E.g.*, N.H. ADMIN. RULES, Lab 1403.09(a) ("Chains, cables, ropes and hooks shall be visually inspected daily by a competent person . . . ."); N.H. ADMIN. RULES, Lab 1403.49(b) ("Complete inspection of [overhead] crane[s] shall be performed at one to twelve month intervals

depending on [their] activity, severity of service, and environment.”). The rules do not establish or require any State department to establish maintenance standards, procedures, or schedules with regard to hoists such as the one involved in the instant case; they merely require a minimum level of safety. *Cf.* N.H. ADMIN. RULES, Lab 1403.47(a) (“All construction equipment in use shall be checked at the beginning of each shift to assure that all parts, equipment, and accessories . . . are . . . free from defects.”). The State argues that because the statute and regulations establish no required inspection or maintenance “standards,” maintenance and inspection remain discretionary — and therefore immune — on the part of the State.

The State’s argument that the absence of formal standards renders all maintenance discretionary has some appeal. *Cf. Fowler v. Roberts*, 556 So. 2d 1, 16 (La. 1989) (plurality opinion) (characterizing State as being “in the anomalous position of claiming that its failure to exercise any discretion is protected by the discretionary function exception to governmental liability”). To a certain degree, any decision involves some degree of discretion. *See* W. PROSSER, THE LAW OF TORTS § 132, at 990 (4th ed. 1971) (each official act involves some discretion, “even if it involve[s] only the driving of a nail” (quotation omitted)). Not all governmental decisions involving an element of discretion fall within the discretionary function exception to the State’s waiver of sovereign immunity, however; rather, the exception applies and immunity attaches when a decision entails governmental planning or policy formulation, involving the evaluation of economic, social, and political considerations. *See Bergeron*, 140 N.H. at 422-23, 666 A.2d at 984; *Opinion of the Justices*, 126 N.H. at 563, 493 A.2d at 1189.

We agree with the State that the decision *whether* to enact regulations requiring particular maintenance or inspection procedures regarding hoists such as the one in the instant case is an act characterized by official discretion. The department may reach its decision whether to impose requirements for maintenance and inspection based upon an evaluation of the policy in favor of safety and the proper allocation of economic and human resources. This is a discretionary balance that the court will not disrupt. *Compare Nordbrock v. State*, 395 N.W.2d 872, 875 (Iowa 1986) (banking department has discretion whether to enact particular regulations to advance statutory mandate) *with Fowler*, 556 So. 2d at 16 (finding implicit in safety statute a requirement that department enact regulations).

The absence of formal standards, however, is not dispositive of the issue of immunity. As we have stated, some standards and guidelines

impose requirements, while others invite discretion. *See Bergeron,* 140 N.H. at 422, 666 A.2d at 985. Accordingly, even when a governmental entity has enacted formal standards, actions following those standards may be discretionary or ministerial in nature. *See id.* Particular State departments may have formulated individual maintenance and inspection programs for certain areas or types of equipment that are not addressed completely by the labor regulations. If we assume, *arguendo*, that some informal standards exist for maintenance and inspection of hoists, the existence of these standards does not render all conduct *following* them either discretionary or ministerial. *Cf. Allen v. Kansas Dept. of Soc. & Rehab. Serv.*, 731 P.2d 314, 316 (Kan. 1987) (reviewing decision to engage in activity and decision how to engage in that activity separately for immunity purposes). A determination of whether the *implementation* of the maintenance and inspection regime thus created is discretionary or not would require an inquiry into the regime itself. *See id.; Gardner,* 137 N.H. at 258, 624 A.2d at 1340. Furthermore, there may be a common law minimum standard of maintenance or inspection, below which the State would have no discretion to fall, despite the absence of formal labor regulations.

The State's argument solely relates to the first part of this inquiry; it argues that its decision not to enact labor regulations rendered all maintenance and inspection of hoists discretionary and thus immune. Although the decision to enact maintenance and inspection regulations is itself a discretionary act, if the plaintiff sufficiently alleged in his pleadings that further requirements existed, summary judgment would be inappropriate. A genuine issue of material fact would remain: the court would analyze the maintenance or inspection requirement actually in place — either formal or informal or derived from the common law — in order to determine whether the process of following it was a ministerial or discretionary function.

In reviewing the trial court's ruling, we consider the writ and the materials offered by the State in its motion for summary judgment, *see Brown v. John Hancock Mut. Life Ins. Co.*, 131 N.H. 485, 490-91, 558 A.2d 822, 824-25 (1989), to determine whether the State was entitled to judgment as a matter of law. Viewing these materials in the light most favorable to the plaintiff and resolving reasonable inferences in favor of the plaintiff, *Dwire,* 138 N.H. at 430, 642 A.2d at 1360, we conclude that the State failed to demonstrate its entitlement to judgment as a matter of law. In his writ, the plaintiff alleged that the State "repaired and maintained [the] desk and hoist in an unsafe and unreasonable manner," that it "failed to adequately

and properly inspect said desk and hoist," and that it "improperly and inadequately controlled and supervised the area in which Plaintiff worked . . . so as to properly prepare [the] area and the desk . . . for cleaning and the performance of other labor." The plaintiff also gave notice to the State that it intended to rely on maintenance standards or obligations imposed under RSA 277:2. In its summary judgment motion, the State included a copy of a report from the plaintiff's expert, which concluded:

> The cause of the accident was continued use of the hoist while in a damaged condition. Because the damage has been readily apparent for most of the hoist's life it appears that either routine maintenance checks were not performed or they were performed but no action was taken to correct[] the deficiency.

We conclude from these counts and this statement a general allegation that maintenance standards of some sort were in force on the part of the State to inspect or maintain the equipment at issue in order to comply with RSA chapter 277, and further, that the State negligently failed to follow those standards.

Upon this record, we cannot conclude that no genuine issue of material fact remained for resolution. RSA 491:8-a, III. The plaintiff raised a sufficient issue of fact as to the existence of such standards to preclude summary judgment on this ground. The State failed to demonstrate that it was entitled to discretionary immunity as a matter of law based on the absence of maintenance standards, and summary judgment properly was denied. The secondary question, whether the procedures actually in place allowed for continued exercise of discretion in inspection, is not before us.

In arguing that sovereign immunity bars the plaintiff's claims, the State also asserts that the plaintiff was not a State employee entitled to the protections of RSA chapter 277. The plaintiff's status as an "employee" of either ServiceMaster or the State is irrelevant to our sovereign immunity inquiry. When we consider an assertion that certain governmental conduct is immune, we occasionally review the relevant statutes, regulations, or ordinances in order to characterize the *nature* of the governmental action, as we have in the instant case. *See, e.g., Bergeron*, 140 N.H. at 422, 666 A.2d at 985. However, our inquiry is *not* into the *scope* of the governmental entity's duty, *i.e.*, whether, in the absence of immunity, the governmental entity had a duty to protect a particular plaintiff from a particular kind of harm. *See Trull v. Town of Conway*, 140 N.H. 579, 581, 669 A.2d 807, 809 (1995); W. KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 131, at 1042-43 (5th ed. 1984).

The State's argument regarding the plaintiff's employment status thus is without merit on the question of immunity.

*II. Standard of Care*

Finally, the State argues that the trial court erred in allowing reference at trial to RSA 277:2 and the labor regulations on the question of the State's duty to the plaintiff. On the question of liability, the jury was instructed both on the State's common law duty to the plaintiff and the asserted statutory duty to the plaintiff. Although the State failed to object to the trial court's jury instructions on this issue, *see* SUPER. CT. R. 72, we treat the argument on appeal as a challenge to the trial court's denial of the State's motion *in limine* to exclude *any* reference to the statutory and regulatory provisions as well as the more limited objection to their inclusion in the trial court's charge.

■ When an action exists at common law, the negligence *per se* doctrine may define the standard of conduct to which a defendant will be held as that conduct required by a particular statute, either instead of or as an alternative to the reasonable person standard. *See Marquay v. Eno*, 139 N.H. 708, 713, 662 A.2d 272, 277 (1995). The familiar test we apply to determine whether a statutory standard of conduct may be offered in a particular case asks "(1) whether the injured person is a member of the class intended by the legislature to be protected, and (2) whether the harm is of the kind which the statute was intended to prevent." *Id.* at 715, 662 A.2d at 277 (quotation omitted). An implicit element of this test is "whether the type of duty to which the statute speaks is similar to the type of duty on which the cause of action is based." *Id.* at 716, 662 A.2d at 278. Whether the elements of the negligence *per se* test have been met is a question of law. *See Lupa v. Jensen*, 123 N.H. 644, 646, 465 A.2d 513, 514 (1983).

We first examine whether the plaintiff was a member of the class of people the legislature sought to protect by enacting RSA chapter 277. The chapter is "a regulatory and penal statute," *Fasekis v. Company*, 93 N.H. 468, 473, 44 A.2d 817, 820 (1945) (applying prior law), which was enacted for the safety and health of employees. *See* Laws 1985, ch. 243 ("An act establishing a New Hampshire Public Employee Safety Act"); Laws 1963, ch. 220 ("An act relative to safety and health of employees"); *cf. State v. Costello*, 138 N.H. 587, 590-91, 643 A.2d 531, 533 (1994) (distinguishing between criminal laws intended to punish offenders and those intended to regulate).

■ RSA chapter 277 applies "to all places of employment in which one or more persons are regularly employed." RSA 277:1

(1987). A "place of employment" for these purposes is defined as including "all buildings, offices or other sites owned or leased by the state or by any political subdivision of the state." RSA 277:1-b, IV (1987). The Health and Human Services Building where the plaintiff's accident occurred fits the statutory definition of a "place of employment," *id.*, and "one or more persons are regularly employed" there, RSA 277:1. Thus the very broad application requirement of the chapter has been met in the instant case. *See* RSA 277:1.

RSA 277:2 states, in pertinent part, that

> [a] person employing *or directing another to perform* labor of any kind in the . . . cleaning . . . of a building . . . shall furnish . . . or cause to be furnished . . . for the performance of such labor . . . hoists . . . which shall be so constructed, placed and operated as to give proper protection to a person so employed or directed.

Accordingly, the State must provide a safe hoist for use by any person it employs directly or by any person it "direct[s] . . . to perform" cleaning of its building. We note that although the word "employee" is defined in RSA 277:1-b, the word "employee" is not used in RSA 277:2. The broad language of both RSA 277:1 and of :2 indicate that the legislature intended to protect against unnecessary *workplace* accidents involving State employees as well as employees of other entities that the State employs to perform services in State buildings. The plaintiff thus is within the class of people the legislature intended to protect by this legislation.

Our discussion of the plaintiff's status as one the legislature intended to protect also makes it clear that this is the sort of harm that the legislature intended to prevent. *See Marquay*, 139 N.H. at 715, 662 A.2d at 277. The plaintiff sustained serious bodily injury while employed in a State building. The protection of State employees and others employed to perform services in State buildings from such bodily injury is a part of the explicit purpose of the Act. *See* Laws 1963, ch. 220 (naming the chapter "[a]n act relative to safety and health of employees"). We conclude that the legislature intended the chapter to protect people like the plaintiff from the sort of harm that the plaintiff suffered. *See Marquay*, 139 N.H. at 714, 662 A.2d at 277. Accordingly, the trial court properly allowed reference to RSA 277:2 and the labor regulations enacted under it in the instant case.

*Affirmed.*

All concurred.