Rockingham
No. 99-104

## FREDERICK AND SHIRLEY DELANEY

v.

## THE STATE OF NEW HAMPSHIRE

March 21, 2001

*Engel & Associates, P.A.*, of Exeter (*James H. Gambrill* on the brief, and *David C. Engel* orally), for the plaintiffs.

*Philip T. McLaughlin*, attorney general (*Nicholas P. Cort*, assistant attorney general, on the brief and orally), for the State.

BRODERICK, J. The plaintiffs, Frederick and Shirley Delaney, appeal from an order of the Superior Court (*Abramson*, J.) granting a motion to dismiss filed by the defendant, the State of New Hampshire. They argue that the trial court erred in ruling that

sovereign immunity for discretionary functions barred their suit against the State. We reverse and remand.

The following facts are undisputed or were found by the trial court. The plaintiffs are the owners of the Sea Squire Motor Lodge, which is located in Hampton to the east of Route 1-A, between the highway and the Atlantic Ocean, by the mouth of the Little River. On the west side of Route 1-A are marshes, which empty into the Little River. During heavy rainstorms, the accumulation of water in the marshes periodically exceeds the drainage capacity of a large box culvert under Route 1-A, causing the water level to rise above the level of the highway. To deal with this problem, the New Hampshire Department of Transportation (DOT) adopted a written policy calling for trenching to relieve storm-generated water accumulation in the area.

From October 20-22, 1996, approximately twelve inches of rain fell in the Hampton area. By the evening of October 20, seven inches of rain had fallen and the runoff from the marsh had accumulated over the shoulder of Route 1-A. The ocean tide was high at approximately 6:00 p.m. that same evening. On October 21, the State directed MCO Excavators, Inc. (MCO) to dig a trench from the ocean westward toward Route 1-A and past the plaintiffs' property in order to facilitate the drainage of the accumulated water. MCO began its work at approximately 11:00 a.m., an hour before low tide. It completed the trench at about 3:00 p.m., during the incoming tide.

As a result of the trenching, the ocean flowed inland, met the surge of floodwater from the marsh, and eroded the banks of the trench. This erosion extended into the plaintiffs' property and caused approximately $285,000 worth of damage to their motor lodge and cabins.

The plaintiffs sued the State and MCO in 1998. After MCO settled with the plaintiffs, the State filed a motion to dismiss, arguing that it was immune from any claim for damages arising from the trenching because its questioned conduct involved the "performance or the failure to exercise or perform a discretionary or executive planning function or duty." The trial court found that the officials who wrote the State policy "were engaged in an executive or planning function involving a high degree of official judgment and discretion." Stating that the DOT employees and agents who dredged the channel "were simply carrying out the State's policy," the court found that the State was immune from suit and granted its motion. This appeal followed.

## I

The plaintiffs contend that the State failed to follow or negligently followed an established plan, which required ministerial action. Accordingly, they argue that the trial court erred as a matter of law in ruling that the State was immune from suit under the "discretionary function exception" to the abrogation of sovereign immunity.

On an appeal from an order granting a motion to dismiss, we must determine whether the plaintiff can prevail based on the allegations contained in the writ, which are to be taken as true and viewed in the light most favorable to the plaintiff. If the facts as alleged would constitute a basis for legal relief, the motion to dismiss should be denied.

*Sorenson v. City of Manchester*, 136 N.H. 692, 693 (1993) (citation and quotation omitted). We note that at the hearing on the motion to dismiss, the plaintiffs specifically informed the court that it was the State's failure to begin and complete the trenching on the outgoing tide, and not the trenching policy itself, that was the basis for their claim, and alleged facts to support this position. Although the trial court's decision on a motion to dismiss is normally "based solely on the allegations in the pleadings, if additional evidence is submitted, without objection, the trial court should consider it when making its ruling." *DiFruscia v. N.H. Dept. of Pub. Works & Highways*, 136 N.H. 202, 204 (1992).

Under the doctrine of sovereign immunity, the State may not be sued in State court without its consent. *Mahan v. N.H. Dep't of Admin. Services*, 141 N.H. 747, 749 (1997). "The legislature waived the State's sovereign immunity when it enacted RSA chapter 541-B, subject to several exceptions." *Id.* RSA 541-B:19 (1997) states, in part:

I. Without otherwise limiting or defining the sovereign immunity of the state and its agencies, the provisions of this chapter shall not apply to:

. . . .

(c) Any claim based upon the exercise or performance or the failure to exercise or perform a discretionary executive or planning function or duty on the part of the state or any state agency or a state officer, employee, or official acting within the scope of his office or employment.

We have said that the discretionary function exception retains governmental immunity for conduct involving an executive or planning function characterized by the exercise of a high degree of official judgment or discretion. *See Mahan*, 141 N.H. at 749. This exception is satisfied where the executive or planning function involves the weighing of alternatives and making choices with respect to public policy and planning. *Id.*

■ The policy at issue here was memorialized in a 1978 letter from the DOT to the Hampton town manager. The letter reads in part, "I wish to assure you and the residents of the area that the [DOT] is committed to open the channel on the outgoing tide following the water level in the marsh reaching the shoulder elevation of Route 1-A."

> We have declined to draw a bright line between discretionary planning and the ministerial implementation of plans, however. Rather, we have stated that it would be possible for workers to implement a faulty design or plan, for which no tort liability should result, but that if, on the other hand, workers negligently follow or fail to follow an established plan or standards, and injuries result, then a government entity could be subject to tort liability.

*Id.* (quotation omitted). It is essential, in making this calculation, to be mindful that "[c]ertain essential, fundamental activities of government must remain immune from tort liability so that our government can govern." *Id.* at 750 (quotation omitted).

The State's argument for immunity, based upon the exercise or performance or the failure to exercise or perform a discretionary or executive planning function or duty, misses the crux of the plaintiffs' allegations. *See DiFruscia*, 136 N.H. at 204.

We do not doubt that the decisions *behind* the adoption of the policy to "open the channel on the outgoing tide following the water level in the marsh reaching the shoulder elevation of Route 1-A" were "characterized by the high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning." *See id.* at 205 (quotation omitted). In fact, the plaintiffs do not question the formulation of that policy. Rather, they question the actions of DOT employees and agents on October 20-21, 1996, in the implementation of that policy. Specifically, they allege that DOT employees or agents negligently followed or failed to follow the established policy.

The plaintiffs allege that by the evening of October 20, 1996, accumulated runoff water from the marsh had reached at least the

level of one shoulder of Route 1-A; that the tide was high at approximately 6:00 p.m.; and that the State did not open the trench during that outgoing tide, nor during the next outgoing tide on October 21. The plaintiffs allege that, rather than follow established policy, the State dug the trench beginning at approximately 11:00 a.m. on October 21, during low tide, and opened it at approximately 3:00 p.m., on the *incoming* tide. They contend that these actions caused damage to their property, and that the question of negligence on the part of the State's employees or agents required the trial court to deny the State's motion to dismiss. *See Allen v. Hampton*, 107 N.H. 377, 378 (1966). We agree. Accordingly, we reverse and remand.

## II

The State contends that even if its actions did not conform precisely to its written policy, the trial court could have found it immune from suit under RSA chapter 541-B due to the emergency circumstances faced by DOT officials. The plaintiffs counter that the State did not make this argument below and it is therefore not properly preserved. At oral argument, the State conceded that it had not advanced its present argument "in [the same] terms" before the trial court, but urged us to decide the issue in the interest of "judicial economy." We decline to do so.

Finally, the State contends that the plaintiffs' claims are grounded in the alleged failure to adequately monitor the water level along Route 1-A on the evening of October 20. The State consequently argues that, since the written policy did not address a monitoring procedure, any decisions as to the type and extent of water-level monitoring were discretionary and thus immune from suit. We need not address whether such decisions were discretionary or ministerial in nature, for the plaintiffs' claims are grounded not on an allegation of inadequate monitoring, but on the allegation that the channel was opened on the incoming tide.

*Reversed and remanded.*

NADEAU and DALIANIS, JJ., concurred; HORTON, J., retired, and GROFF, J., superior court justice, specially assigned under RSA 490:3, concurred.