Siegel v. Meadow Green                CV-99-086-M    11/22/99

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Heather Siegel, Executrix of
the Estate of Ted Siegel, et al.,
    Plaintiffs

    v.                                    Civil No. 99-86-M

Meadow Green - Wildcat Corp.,
d/b/a Wildcat Mountain Ski Area,
    Defendant


**O R D E R**


In February of this year, plaintiffs filed a two count complaint against Meadow Green - Wildcat, Corp., d/b/a Wildcat Mountain Ski Area ("Wildcat"), seeking damages for injuries to, and the subsequent death of, Ted Siegel.  Count one of plaintiffs' complaint alleges that Wildcat breached certain common law duties owed to the skiing public, proximately causing Mr. Siegel to lose control, ski off the trail, and collide with a tree.  Count two alleges that Mr. Siegel's accident was also caused by Wildcat's breach of certain statutory duties owed to the skiing public.


Pending before the court is Wildcat's motion to dismiss for failure to state a cause of action.  See Fed. R. Civ. P. 12(b)(6).  Wildcat alleges that, as a matter of law, neither count in plaintiffs' complaint sets forth a viable claim under New Hampshire law.  Plaintiffs object.

## Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In considering a motion to dismiss, "the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted, with dismissal to be ordered only if the plaintiff is not entitled to relief under any set of facts he could prove." Chasan v. Village District of Eastman, 572 F.Supp. 578, 579 (D.N.H. 1983), aff'd without opinion, 745 F.2d 43 (1st Cir. 1984) (citations omitted).

## Discussion

On February 23, 1997, Ted Siegel was skiing at Wildcat with his son and daughter. Plaintiffs claim that Wildcat's negligent maintenance of the trail and its failure to properly inspect and sign that trail proximately caused Mr. Siegel to lose control and ski into the woods. Mr. Siegel sustained severe injuries and died not long after the accident.

Although counts one and two of the complaint articulate different theories of recovery (breach of common law duties and breach of statutory duties), Wildcat's alleged culpable conduct is the same in each count. Compare complaint, para. 35 with

2

complaint, para. 48. Both count one and count two allege that Wildcat breached certain duties owed to plaintiffs' decedent by failing to:

a.  Properly mark the trail on which the decedent was injured;

b.  Provide adequate and proper written operational policies and procedures for risk reduction, identification of dangerous conditions, trail assessment, maintenance of ski trails, and safe operation of the ski area;

c.  Adequately and properly inspect the trails to identify dangerous conditions and to identify developing dangerous conditions;

d.  Provide adequate and properly trained maintenance personnel to conduct inspections of trails and to identify present or developing dangerous conditions;

e.  Provide adequate and proper training of personnel;

f.  Provide adequate and proper management of the ski area;

g.  Perform appropriate inspections and to identify and close unreasonably dangerous trails;

h.  Mark unreasonably dangerous trails with appropriate signage indicating that said trails were closed;

i.  Identify on a trail board that said unreasonably dangerous trails were closed;

j.  Adequately advise skiers through the use of the trail board or other means at the base of the mountain as to the weather and surface conditions on the slopes above; and

k.  Adequately warn skiers through the use of such trail board of unreasonably dangerous ice and snow conditions existing on the mountain.

Complaint at paras. 35 and 48.

3

Wildcat asserts that both counts in plaintiffs' complaint are barred by N.H. Rev. Stat. Ann. ("RSA") ch. 225-A, which provides, in pertinent part, that:

> It is hereby recognized that, regardless of all safety measures which may be taken by the ski area operator, skiing as a sport and the use of passenger tramways associated therewith may be hazardous to the skiers or passengers. Therefore:
>
> Each person who participates in the sport of skiing accepts as a matter of law, the dangers inherent in the sport, and to that extent <u>may not maintain an action against the operator for any injuries which result from such inherent risks, dangers, or hazards</u>. The categories of such risks, hazards or dangers which the skier or passenger assumes as a matter of law include <u>but are not limited to</u> the following: variations in terrain, surface or subsurface snow or ice conditions; bare spots; rocks, trees, stumps and other forms of forest growth or debris; lift towers and components thereof (all of the foregoing whether above or below snow surface); pole lines and plainly marked or visible snow making equipment; collisions with other skiers or other persons or with any of the categories included in this paragraph.

RSA 225-A:24 I (emphasis supplied).


I.    Count I - Common Law Negligence.

Wildcat asserts that count one of plaintiffs' complaint is barred by the provisions of RSA 225-A. The court agrees. As the Court of Appeals for the First Circuit observed:

> It is clear from the plain and unambiguous wording of [RSA 225-A:24] that the legislature intended to place the burden of certain risks or dangers on skiers, for actions arising as a result of dangers inherent in the sport of skiing, rather than on ski area operators. By the mere act of skiing, the skier accepts, as a matter of law, the risk that he or she might be injured in a manner that falls within the scope of the statute.

4

> Thus, the statute clearly indicates that in enacting chapter 225-A, the legislature intended to supercede and replace a skier's common law remedies for risks inherent in the sport of skiing.

Berniger v. Meadow Green-Wildcat Corp., 945 F.2d 4, 7 (1st Cir. 1991). In a footnote, the court acknowledged that the statute does not, however, prohibit a limited class of common law claims against ski operators: those that relate to injuries resulting from "negligent construction or maintenance of a tramway or any building." Id., at 7 n.3. Plainly, however, plaintiffs' claims relate to, and arise out of, Mr. Siegel's having skied off a trail and into the woods - precisely the sort of inherent risk associated with skiing assumed by skiers under the statute, and with regard to which they may not maintain common law negligence claims against ski area operators.

Plaintiffs attempt to circumvent the provisions of RSA 225-A by asserting that Mr. Siegel's injuries and death were caused by factors unrelated to the inherent risks associated with skiing as identified in the statute. That argument is, however, unavailing. As pled, these claims arise from precisely the type of circumstances the legislature sought to preclude as bases for ski operator liability – skiing off a trail into the woods due to ice, conditions of the terrain, and/or an inability to safely negotiate the slopes under the prevailing conditions.

Plaintiffs' common law negligence claims against Wildcat (count one) are barred by RSA 225-A. To the extent the complaint sets forth any viable claims, they relate to Wildcat's alleged violations of <u>statutory</u> duties imposed by RSA 225-A, as described in count two.

II. Count Two - Violations of RSA 225-A.

Count two of plaintiffs' complaint alleges that Wildcat violated numerous explicit and implicit statutory duties imposed by RSA 225-A. Construing the complaint liberally, as the court must at this stage of the litigation, count two arguably asserts a viable claim for violation of certain statutory duties imposed upon Wildcat by RSA 225-A.

Section 23 of RSA 225-A identifies the specific responsibilities of ski area operators and imposes upon them the following obligations:

1. To use a trail marking system established by the National Trail Marking System, which consists of a series of color coded signs indicating the relative degree of difficulty of each trail within the ski area;

2. To mark the beginning of each ski trail or slope with the appropriate symbol for that particular trail or slope's degree of difficulty;

3. To mark with an appropriate sign the beginning of (and designated access points to) each trail that is closed;

4. To maintain a "trail board" in a prominent location, which depicts each trail or slope

within the area, discloses its relative degree of difficulty, and informs the skiing public which trails or slopes are closed;

5. When applicable, to warn skiers by use of the trail board or other appropriate means that snow grooming or snow making operations are routinely in progress on the slopes and trails;

6. To provide all skiers with a map indicating the system of trails and slopes at the ski area; and

7. At or near all ski jump facilities, to provide a sign that warns the ski jumper that the use of the ski jump is entirely at the ski jumper's own risk. The ski area operator is responsible for the design, construction, and structural maintenance of all ski jumps.

RSA 225-A:23.

While many of the alleged "duties" identified by plaintiffs are not imposed upon Wildcat by the statute, a few are. For example, the complaint alleges that Wildcat failed to "properly mark the trail on which Ted Siegel was injured." Complaint, para. 48(a). See also RSA 225-A:23 III(a). It also alleges that Wildcat failed to "mark unreasonably dangerous trails with appropriate signage indicating that said trails were closed." Complaint, para. 48(h). See also RSA 225-A:23 III(b). Finally, plaintiffs claim that Wildcat failed to "identify on a trail board that said unreasonably dangerous trails were closed." Complaint, para. 48(i). See also RSA 225-A:23 II(a). Plaintiffs specifically allege that "it was the failure of the instant Defendant to comply with the foregoing statutory duties which

7

resulted in Ted Siegel's death." Plaintiffs' memorandum (document no. 7) at 7.

Thus, liberally construed, paragraphs 48(a), (h), and (i) of plaintiffs' complaint assert a cognizable claim against Wildcat for its alleged breach of certain duties imposed by RSA 225-A.[1] Of course, whether plaintiffs can demonstrate the causal link between Mr. Siegel's death and Wildcat's alleged failure to properly mark the trail on which he was skiing (or to post the statutorily prescribed signs indicating that the trail was closed if it was, in fact, closed) is not currently before the court. At this juncture, the court need only determine whether, assuming the truth of the factual allegations set forth in the complaint, plaintiffs' have stated a viable claim. And, for the reasons set forth above, the court concludes that they have. See generally Nutbrown v. Mount Cranmore, 140 N.H. 675, 683 (1996) ("RSA 225-A:24 bars any action by a skier or tramway passenger to the

---

[1] To the extent plaintiffs assert that Wildcat had a statutory duty to periodically inspect and assess the condition of its trails and "close unreasonably dangerous trails," complaint, para. 48(h), they are incorrect. Whether and under what circumstances a trail should be closed (e.g., for repairs to snow making or lift equipment, construction of a jump, or merely to eliminate the wear caused by skiers and to allow for the accumulation of man-made snow) is left entirely to the operator. The statute simply imposes upon the operator an obligation to clearly mark trails that it has decided to close. It sets no standards for determining which trails should be closed, nor does it impose any obligation on operators to routinely assess the condition of trails. That some trails might be or become icy, or have surface irregularities, bare spots, rocks, stumps, trees, or other vegetation are all risks assumed by the skier. See RSA 225-A:24 I.

8

extent that the injuries were caused by an inherent risk of skiing. The plaintiff's allegation that the defendant violated RSA 225-A:23 by failing 'to properly mark' the beginning of a trail does not involve an inherent risk of skiing. Rather, it asserts a statutory violation. Therefore, the portion of plaintiff's complaint alleging this violation is not barred by RSA 225-A:24.").

The remaining allegations in paragraph 48 of the complaint, however, do not set forth cognizable claims against Wildcat. See, e.g., MacDonald v. Loon Mountain Rec. Corp, No. 98-571-B, slip op. (D.N.H. January 10, 1999). In MacDonald, this court (Barbadoro, C.J.) dismissed plaintiff's claims, reasoning that they were barred by RSA 225-A:24.

> [Plaintiff] argues that her case is governed by an exception to the general rule [prohibiting suits for injuries arising out of the inherent dangers of skiing] because [her injuries were] caused by the defendant's failure to properly mark the trail. A ski operator must mark the beginning of each trail with the appropriate difficulty designation. Under certain circumstances, it must also designate areas that are either extra hazardous or closed to skiers. However, New Hampshire law does not require the additional signage suggested by the plaintiff's complaint. Accordingly, this case does not fall within any exception to the general rule prohibiting suits against a ski operator for injuries resulting from [the inherent risks associated with skiing].

Id., at 2. Judge Barbadoro's reasoning in MacDonald applies with equal force in this case. The additional duties plaintiffs say are owed by Wildcat to the skiing public are simply not imposed

9

by RSA 225-A, and suggestions of common law duties are necessarily supplemented by the statute. In short, the statute does not impose upon ski area operators the obligation to undertake the sort of anticipatory or preventative safety measures urged by plaintiffs. See <u>Nutbrown</u>, 140 N.H. at 684. Skiing is an inherently risky activity and the risks are, by and large, assumed by those who choose to participate. Accordingly, paragraphs 48(b), (c), (d), (e), (f), (g), (j), and (k) of plaintiffs' complaint are dismissed.

## Conclusion

The common law negligence claims described in count one of plaintiffs' complaint are barred by RSA 225-A. As to count two, most of the "duties" plaintiffs assert Wildcat breached (e.g., obligation to provide adequate training to staff, to inspect the trail and identify potentially dangerous conditions, to warn skiers of weather and surface conditions on the slopes, etc.) are not based on the applicable statute. A portion of count two, however, sets forth a viable tort claim – that Wildcat breached statutorily imposed duties to the skiing public (i.e., paragraphs 48(a), (h), and (i)).

Accordingly, defendant's motion to dismiss (document no. 4) is granted in part and denied in part. Count one of plaintiffs' complaint is dismissed. Plaintiffs are, however, entitled to present evidence in support of the claims alleged in paragraphs

10

48(a), (h), and (i) of Count two. The remaining claims set forth in count two are dismissed.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 22, 1999

cc:  Shawn E. Nichols, Esq.
     Thomas B. S. Quarles, Jr., Esq.