Eileen Gwyn v. Loon Mtn. Corp.          CV-01-214-B    12/19/02

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Eileen Gwyn, as Executor of**
**the Estate of Howard Gwyn,**
**Eileen Gwyn on her own behalf,**
**and Margaret Do**

        v.                              Civil No. 01-00214-B
                                        2002 DNH 217
**Loon Mountain Corporation**
**d/b/a Loon Mountain Ski Area**


**MEMORANDUM AND ORDER**

In this diversity case arising from a ski accident, Eileen
Gwyn (individually and on behalf of her late husband's estate)
and Margaret Do (Gwyn's daughter) are suing Loon Mountain
Corporation ("Loon") for damages they suffered as a result of the
accident.  Two motions for summary judgment filed by Loon are
presently pending.  For the reasons that follow, I grant the
defendant's first motion for summary judgment (Doc. No. 33),
which in turn renders the defendant's second motion for summary
judgment moot (Doc. No. 32).

# I.  BACKGROUND[1]

While skiing at Loon, Howard Gwyn, his daughter Margaret Do, and Do's fiancé Mark Gross traveled down the upper part of the Big Dipper trail to the area where it adjoins the Triple Trouble trail.  The Triple Trouble trail was closed at the time, and the beginning of the trail was marked with a "closed" sign and a "closure rope."  Also, a trail board was present at the base of the mountain indicating that Triple Trouble was closed.

As Howard Gwyn reached the area adjacent to the junction of Big Dipper and Triple Trouble, he fell and unintentionally slid down the closed Triple Trouble trail.  Do and Gross removed their skis and attempted to rescue Gwyn by walking down the slope towards him.  However, Do and Gross both slipped and plummeted down the icy trail as well.  Gwyn and Gross died as a result of this awful and sad accident.  Do suffered severe injuries.

---

[1]  A more detailed presentation of the underlying accident in this case can be found in my prior order regarding Loon's motion to dismiss.  See Gwyn et. al. v. Loon Mountain Corp, No. CV-01-00214-B, (D.N.H. May 15, 2002).  Thus I recount only the evidence pertinent to the resolution of Loon's first motion for summary judgment, construing it in the light most favorable to the plaintiffs.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001) (summary judgment standard).

In a prior order granting in part Loon's motion to dismiss, I determined that two viable claims under the statutory framework of New Hampshire's Skiers, Ski Area, and Passenger Tramway Safety Act ("Ski Statute"), N.H. Rev. Stat. Ann. § 225-A ("RSA 225-A"), survived Loon's motion. Gwyn, No. CV-01-00214-B (D.N.H. May 15, 2002). Specifically, I ruled that:

> If plaintiffs can establish that defendant failed to designate the Triple Trouble trail as closed on its base area trail board . . . and that Howard Gwyn would have avoided the icy area where he fell but for this statutory violation, a jury reasonably might conclude that the statutory violation caused his fatal injuries. Similarly, if the plaintiffs can establish that defendant failed to place a closed sign on the Triple Trouble trail's designated access point from the Big Dipper trail, and that Howard Gwyn would have approached the trail junction differently - e.g., less aggressively or at a different angle - but for this statutory violation, a jury reasonably might conclude that the statutory violation caused his fatal injuries.

Id. (citations omitted). The two viable claims are based upon the statutory responsibility of Loon to (1) maintain a base area trail board designating "which trails and slopes are open or closed," RSA 225-A:23, II(a); and (2) "mark the beginning of, and designated access points to, each alpine trail or slope that is closed with a sign in accordance with RSA 225-A:23, I(e)," RSA 225-A:23, III(b). The parties refer to these two claims as the

-3-

trail board claim and the trail closure claim, respectively.

Loon now moves for summary judgment, arguing that the plaintiffs have stipulated that a base area trail board was present at Loon on the day of the accident in compliance with RSA 225-A:23, II(a). The board indicated that Triple Trouble was closed. Further, Loon argues that plaintiffs stipulate that the beginning of Triple Trouble was marked "closed" in compliance with RSA 225-A:23, III(b). As such, it concludes that no genuine issue of material fact is in dispute and that it is entitled to judgment as a matter of law. I agree.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A material fact is one that affects the

-4-

outcome of the suit.  See id. at 248.

In ruling upon a motion for summary judgment, I must construe the evidence in the light most favorable to the non-movant.  See Navarro, 261 F.3d at 94.  The party moving for summary judgment, however, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson, 477 U.S. at 249).  Neither conclusory allegations, improbable inferences, or unsupported speculation are sufficient to defeat summary judgment.  See Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002).

## III.  DISCUSSION

As the plaintiffs concede that a base trail board was present on the day of the accident listing Triple Trouble as closed, I grant the defendant's motion for summary judgment as to the trail board claim. See Plfs' Mem. in Supp. of Obj. to Def's 1st Mot. Summ. J., p.6-7; Stip. ¶ 1.

Turning to the trail closure claim, the plaintiffs have stipulated that "the beginning of the Triple Trouble trail at Loon Mountain was marked with a closed sign in compliance with RSA 225-A:23, I(e).  It was also marked with a closure rope at approximately waist height."  Stip. ¶ 2.  Correctly noting that the Ski Statute requires ski area operators to mark as closed both the beginning of a trail and its "designated access points," RSA 225-A:23, III(b), the plaintiffs interpret the phrase "designated access points" as including any trail that eventually leads to or reaches a closed trail.  They conclude, therefore, that summary judgment is not appropriate because the facts indicate that, although Loon properly marked the beginning of Triple Trouble, it did not mark all the trails along the plaintiffs' ski route that lead to Triple Trouble with signs indicating that it was closed.

The resolution of this case involves a straight-forward question of statutory interpretation:  Does the phrase "designated access points," RSA 225-A:23, III(b), mean the beginning of any trail from which a skier may eventually reach or enter a closed trail?  I conclude that it does not.

The starting point in any statutory interpretation case is the language of the statute itself. <u>N.H. Hemp Council, Inc. v. Marshall</u>, 203 F.3d 1, 6 (1st Cir. 2000).  I look to the plain and ordinary meanings to words used and should assume that they accurately express the legislature's intent.  <u>Inmates of Suffolk Cty. Jail v. Rouse</u>, 129 F.3d 649, 654 (1st Cir. 1997).  However, I do not merely look at isolated words or phrases, but instead consider the statute as a whole.  <u>Kenerson v. F.D.I.C.</u>, 44 F.3d 19, 23 (1st Cir. 1995).  If the language, when viewed in accord with the above principles, is plain and unambiguous, I need not look beyond the statute for further indications of legislative intent.  <u>Bryson v. Shumway</u>, 308 F.3d 79, 85 (1st Cir. 2002).

RSA 225 A:23, III states:

> III.  Ski Trails and Slopes; Information and Warning to Skiers and Other Persons
>
> (a) The operator shall mark the beginning of each ski trail or slope with the appropriate symbol for that

particular trail's or slope's degree of difficulty in accordance with RSA 225-A:23, I(a), (b) and (c).

(b) The operator shall mark the beginning of, and designated access points to, each alpine trail or slope that is closed with a sign in accordance with RSA 225-A:23, I(e).

Read in isolation, the meaning of the phrase "designated access points" is not entirely clear. When read in the context of the statute as a whole, however, the phrase plainly means any junction where the closed trail actually intersects with another trail. In other words, the statutory provision mandates that ski operators properly mark the beginning of, or any point of actual entry onto, each trail that is closed. I reach this conclusion for three reasons.

RSA 225-A:23, III(a) sets forth the markings that must appear at "the beginning of <u>each ski trail or slope</u>." (Emphasis added.) These markings only include the appropriate degree of difficulty symbol in accordance with the National Trail Marking System. RSA 225-A:23, III(a). Therefore, this provision does not mandate that the beginning of each trail or slope be marked with a sign indicating that upcoming or accessible trails are closed.

In contrast, ski area operators are required to mark both "the beginning of, and designated access points to, each alpine trail or slope <u>that is closed,</u>" with a sign marking it as such. RSA 225-A:23, III(b) (emphasis added). Reading these two provisions together, the plain language indicates that while RSA 225-A:23, III(a) sets forth the required markings for <u>each</u> trail, RSA 225-A:23, III(b) pertains solely to markings that must appear on <u>closed</u> trails. If the legislature had intended to require ski area operators to place additional signs (such as signs indicating that an upcoming trail is closed) at the beginning of <u>each</u> trail, it would have included such a mandate in RSA 225-A:23, III(a). The legislature did not do so, and I will not read into the statute words or phrases that the legislature has chosen not to include. <u>Belluscio v. Town of Westmoreland</u>, 139 N.H. 55, 56 (1994). Accordingly, the plain language of RSA 225-A:23, III(b) only requires ski area operators to mark the beginning of and any "designated access points" that exist on a closed trail. It does not require any such marking at the beginning of each trail that may lead to a closed trail.

Further, the legislature has mandated that ski area operators post a trail board at the base of the mountain

indicating which trails are open or closed.  RSA 225-A:23, II(a).
Interpreting "designated access points" as requiring that signs
be posted at the beginning of every trail that leads to a closed
trail would essentially require ski mountain operators to post
trail boards on the mountain in addition to at the base.  The
plaintiffs' interpretation, if followed, would result in a
judicially created duty upon ski area operators to post trail
boards in places other than the base area.  A ski area is only
obligated to comply with the obligations expressed in the Ski
Statute, Nutbrown v. Mount Cranmore, 140 N.H. 675, 681, 683
(1996), and I will not read into the statute words or phrases
that the legislature has chosen not to include.  Belluscio, 139
N.H. at 56.

Lastly, if I were to adopt the plaintiffs' interpretation,
ski area operators would only be required to mark the beginning
of a closed trail and the beginning of a trail that leads to a
closed trail with signs pursuant to RSA 225-A:23, I(e).  This
would lead to two results that run counter to common sense.
First, ski area operators would not be required to mark the
junctions, or actual access points, where an open trail
intersects a closed trail at some point below the beginning of

-10-

the closed trail. Thus, skiers would not be prevented from entering a closed trail at these entry points. This makes no sense. Second, RSA 225-A:23, I(e) requires that the appropriate National Trail Marking symbol be used to mark a closed trail: a skier with a black band running diagonally across the sign. There is no requirement to put the name of the closed trail on the sign. Placing such a generic sign at the beginning of an open trail would do nothing but inform the skier, at best, that an upcoming, unknown trail is closed. At worst, since the sign would be posted at the beginning of the open trail, it may mislead the skier into thinking that the open trail itself is closed. The most appropriate place to put a closed trail sign is at the beginning of, and at any point of actual entry onto, a trail that is closed. Placing signs in these spots provides the skier with the information needed to avoid skiing down a closed trail. When read together, RSA 225-A:23, III(b) and I(e) accomplish this goal.

In this case, the beginning of the Triple Trouble trail is also the trail's designated access point from which a skier may enter it from Big Dipper trail. Therefore, Loon was only required to post a closed trail sign at the area where a skier

-11-

may enter Triple Trouble from the point where it intersects with Big Dipper.  The plaintiffs have stipulated that this area "was marked with a closed sign in compliance with RSA 225-A:23, I(e)." As there is no genuine dispute as to any material fact and Loon fulfilled its statutory obligation by posting the requisite closed trail sign, I grant summary judgment to Loon in regards to the trail closure claim.

## IV.  CONCLUSION

I grant the defendant's motion for summary judgment (Doc. No. 33).  The Clerk is directed to enter judgment accordingly and to close the case.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

December 19, 2002

cc:  Kevin M. Leach, Esq.
     Thomas Quarles, Jr., Esq.