Belknap
No. 99-305

JONATHAN RAYESKI

v.

GUNSTOCK AREA/GUNSTOCK AREA COMMISSION

June 14, 2001

*Boynton, Waldron, Doleac, Woodman & Scott, P.A.*, of Portsmouth (*Francis X. Quinn, Jr.* and *David C. Klingebiel* on the brief, and *Mr. Klingebiel* orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Joseph M. McDonough, III* and *Margaret A. O'Brien* on the brief, and *Thomas Quarles* orally), for the defendant.

NADEAU, J. The plaintiff, Jonathan Rayeski, appeals the Superior Court's (*Smukler*, J.) order granting the defendant's, Gunstock Area/Gunstock Area Commission, motion to dismiss. We affirm.

The plaintiff's amended writ of summons alleged that at approximately 4:30 p.m. on or about January 8, 1997, while skiing at the Gunstock Recreation Area, he struck a light pole used for night skiing and was injured as a result of the defendant's failures to (1) maintain its trails properly and safely, specifically by failing to pad the light pole and (2) make the light pole visible under all foreseeable circumstances. The defendant moved to dismiss on the ground that the plaintiff's claims were barred by RSA 225-A:24 (2000). The trial court granted the motion, ruling that the plaintiff's injuries were caused by a risk inherent to skiing.

On appeal, the plaintiff argues that the trial court erred in: (1) holding that collision with a light pole is an inherent risk of skiing; (2) presuming that the plaintiff lost control before striking the light pole when that fact was not pleaded; and (3) ruling that the defendant did not owe the plaintiff a duty to pad the light pole. In reviewing the trial court's grant of a motion to dismiss, our task is to ascertain whether the allegations pleaded in the plaintiff's writ "are reasonably susceptible of a construction that would permit recovery." *Williams v. O'Brien*, 140 N.H. 595, 597 (1996) (quotation omitted). We assume all facts pleaded in the plaintiff's writ are true, and we construe all reasonable inferences drawn from those facts in the plaintiff's favor. *See Provencal v. Vermont Mut. Ins. Co.*, 132 N.H. 742, 745 (1990). We then engage in a "threshold inquiry that tests the facts in the complaint against the applicable law." *Williams*, 140 N.H. at 597-98.

The applicable law is RSA 225-A:24, I, which provides, in part:

> Each person who participates in the sport of skiing accepts as a matter of law, the dangers inherent in the sport, and to that extent may not maintain an action against the [ski area] operator for any injuries which result from such inherent risks, dangers, or hazards. The categories of such risks, hazards or dangers which the skier or passenger assumes as a matter of law include but are not limited to the following: variations in terrain, surface or subsurface snow or ice conditions; bare spots; rocks, trees, stumps and other forms of forest growth or debris; lift towers and components thereof (all of the foregoing whether above or below snow surface); pole lines and plainly marked or visible snow making equipment; collisions with other skiers or other persons or with any of the categories included in this paragraph.

"On questions of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *In re Justin D.*, 144 N.H. 450, 452 (1999) (quotation omitted). In interpreting a statute, we first look to the words used and apply their plain and ordinary meanings whenever possible. *See Appeal of Astro Spectacular*, 138 N.H. 298, 300 (1994).

Recognizing that RSA 225-A:24 essentially adopted the primary assumption of the risk doctrine, we have interpreted it to mean that ski area operators owe no duty to skiers to protect them from the inherent risks of skiing. *See Nutbrown v. Mount Cranmore, Inc.*, 140 N.H. 675, 680 (1996). The question before us, then, is whether the plaintiff's collision with the light pole was an inherent risk, danger or hazard of skiing within the contemplation of the statute.

The defendant argues that the light pole struck by the plaintiff was part of the "pole lines" specifically listed in RSA 225-A:24. The record before us, however, reveals no indication that this argument was raised before the trial court and the trial court's order makes no finding of fact or ruling of law on the issue. We therefore decline to address the argument and express no opinion as to its merit. *See State v. Sterndale*, 139 N.H. 445, 448 (1995). Rather, the issue before us is whether the trial court erred in finding that the light pole, even if not specifically enumerated in RSA 225-A:24, nevertheless constituted a risk encompassed by the statute.

The statute does not limit the risks assumed to those enumerated therein. *See Nutbrown*, 140 N.H. at 684. The plaintiff argues that his collision with the light pole differs from the risks enumerated in RSA 225-A:24 because the pole was unmarked and not visible to skiers under the lighting conditions at 4:30 p.m. He asserts that the risks enumerated in RSA 225-A:24 deal with "variations in terrain, natural objects, massive man made objects or plainly marked or visible small man made objects," and contends that a light pole is substantially similar to snow making equipment because both are "relatively small man made objects" located on or near a ski trail. He then argues that because the statute implies that collision with unmarked or invisible snow making equipment is not an inherent risk of skiing, neither is collision with an unmarked or invisible light pole. We disagree.

■■ We discern no general intent in RSA 225-A:24 to classify potential obstacles on ski trails based upon their size or whether they are natural or man-made, or to require they be marked or their visibility enhanced accordingly. We note, for instance, that both natural snow and ice conditions and man-made components of lift towers are enumerated as inherent risks regardless of size or whether they are found above or below the snow surface. We conclude that the legislature's explicit reference to "plainly marked or visible snow making equipment" was intended to balance the immunity granted to ski area operators under RSA 225-A:24 with their duty under RSA 225-A:23, II(b) (2000) to warn skiers of snow making or grooming activities by denying immunity to ski area operators who breach a statutorily imposed safety responsibility. *Cf. Nutbrown*, 140 N.H. at 683.

■■ RSA 225-A:23 does not, however, require ski area operators to pad, mark or otherwise ensure the visibility of light poles. We therefore conclude that light poles, like the lift towers and pole lines enumerated in RSA 225-A:24, need not be plainly marked or visible to constitute an inherent risk of skiing. We also conclude that a pole holding lights for night skiing is, like the hazards enumerated in RSA 225-A:24, the type of obstruction a skier can expect to encounter on a ski trail, and therefore an inherent risk of skiing. Accordingly, we hold that the plaintiff's action is barred by RSA 225-A:24.

The plaintiff argues that the trial court erred by presuming facts not in evidence in ruling on the defendant's motion to dismiss. Specifically, the trial court compared this case to *Nutbrown*, in which the plaintiff lost control, left the ski trail and collided with an

object in the woods. *See Nutbrown*, 140 N.H. at 677. We held in *Nutbrown* that the risk that a skier might lose control and leave the ski trail was "an unenumerated, yet quintessential risk of skiing." *Id.* at 684. The trial court here stated: "Likewise, striking a large, fixed object such as a light pole is also one of the quintessential risks of skiing. The duty falls upon the skier to keep himself under control."

The plaintiff argues that because he never alleged that he lost control before striking the light pole, the trial court's decision erroneously assumed a fact not contained in the pleadings. We need not address that issue, however, because we conclude that a finding of loss of control by the plaintiff was not necessary to the trial court's decision. The trial court found that the light pole itself was similar to the obstructions listed in RSA 225-A:24 and was therefore a danger inherent to skiing. The court stated: "Man-made objects, which are affixed and necessary to the operation of a ski area, are part of the inherent risks face[d] by skiing enthusiasts." Thus, any mention of the plaintiff's loss of control was unnecessary to the trial court's decision, and therefore, even if erroneous, was harmless.

Finally, the plaintiff argues that the defendant assumed the duty to pad the light pole under the common law as stated in RESTATEMENT (SECOND) OF TORTS § 323 (1965) because it had voluntarily padded its light poles in the past. The plaintiff's amended writ, however, neither sets forth a theory of voluntarily assumed duty nor alleges that the defendant ever padded any of its poles, notwithstanding that the defendant pointed out this omission before the plaintiff amended his writ. In ruling on a motion to dismiss, "the trial court [is] not obligated to consider factual allegations not raised in the plaintiff's writ." *Jenks v. Menard*, 145 N.H. 236, 239 (2000). We therefore find no error in the trial court's order.

We also reject the plaintiff's argument that his claim falls within the category of "injuries caused by the [ski area] operator's own negligent or intentional acts" that we noted in Nutbrown were not barred by RSA 225-A:24. *See Nutbrown*, 140 N.H. at 680. The categories of injuries caused by an inherent risk of skiing and injuries caused by negligence are mutually exclusive. As we recognized in *Nutbrown*, the doctrine embodied in RSA 225-A:24 "is simply an alternative expression for the proposition that the defendant was not negligent, that is, there was no duty owed or there was no breach of an existing duty." *Id.* (quotation omitted). Thus, an injury caused by an inherent risk cannot have been negligently caused because there is no duty to protect against such

risks. Having determined that the plaintiff's injuries were caused by an inherent risk of skiing, we necessarily conclude that they were not caused by the defendant's negligence.

*Affirmed.*

DALIANIS, J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.