Grafton
No. 2006-177

BETH CECERE, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF LOUIS T. CECERE

v.

LOON MOUNTAIN RECREATION CORP. & a.

Argued: February 21, 2007
Opinion Issued: April 19, 2007

*Wiggin & Nourie, P.A.*, of Manchester (*Peter E. Hutchins* and *Gail E. Bakis* on the brief, and *Mr. Hutchins* orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Thomas Quarles, Jr.* and *Matthew R. Johnson* on the brief, and *Mr. Quarles* orally), for the defendants.

DALIANIS, J. The plaintiff, Beth Cecere, individually and as administratrix of the estate of her son, Louis T. Cecere, appeals the order of the Superior Court (*Burling*, J.) granting summary judgment to the defendants, Loon Mountain Recreation Corporation and Booth Creek Ski Holdings, Inc. We affirm.

The trial court recited the following facts in its order: On January 3, 2004, the decedent was snowboarding on Loon Mountain. He attempted to navigate the "Tombstone Jump" located in the Loon Mountain Terrain Park. The terrain park is part of the alpine area of Loon Mountain. Both alpine skiers and snowboarders typically use its features, including jumps. Because he failed to land safely, the decedent sustained serious injuries and tragically died two days later.

Thereafter, the plaintiff sued the defendants for negligence and for violating the New Hampshire Consumer Protection Act (CPA). The defendants moved for summary judgment, arguing, in part, that RSA chapter 225-A (2000) (amended 2005) barred her negligence claims and that she failed to prove her CPA claim. The trial court granted the motion.

When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Dalton Hydro v. Town of Dalton*, 153 N.H. 75, 77 (2005). If our review of the evidence does not reveal any genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's

decision. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

I

We first address the parties' arguments with respect to RSA chapter 225-A. We review the trial court's interpretation of RSA chapter 225-A *de novo. Soraghan v. Mt. Cranmore Ski Resort,* 152 N.H. 399, 401 (2005). We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Id.* We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. *Id.* Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *Id.*

Moreover, we strictly interpret statutes that are in derogation of the common law. *Id.* While a statute may abolish a common law right, there is a presumption that the legislature has no such purpose. *Id.* If such a right is to be taken away, it must be expressed clearly by the legislature. *Id.* Accordingly, immunity provisions barring the common law right to recover are strictly construed. *Id.* at 401-02.

RSA 225-A:24, I, is an immunity provision for ski area operators. *Sweeney v. Ragged Mt. Ski Area,* 151 N.H. 239, 242 (2004). The legislature intended this provision to "supersede and replace a skier's common law remedies for risks inherent in the sport of skiing." *Id.* (quotation omitted). Under this provision:

> Each person who participates in the sport of skiing accepts as a matter of law, the dangers inherent in the sport, and to that extent may not maintain an action against the operator for any injuries which result from such inherent risks, dangers, or hazards. The categories of such risks, hazards or dangers which the skier or passenger assumes as a matter of law include but are not limited to the following: variations in terrain, surface or subsurface snow or ice conditions; bare spots; rocks, trees, stumps and other forms of forest growth or debris; . . . pole lines and plainly marked or visible snow making equipment; collisions with other skiers or other persons or with any of the categories included in this paragraph.

RSA 225-A:24, I.

Because the phrase "sport of skiing" is not specifically defined, we have looked to other provisions for guidance. *Sweeney,* 151 N.H. at 242. RSA 225-A:2, II defines a skier as "a person utilizing the ski area under

the control of a ski area operator for the purpose of utilizing the ski slopes, trails, jumps or other areas." Ski slopes, trails and areas "mean only those areas designated by the alpine or nordic ski operator on trail boards or maps supplied by such operator, to be used by skiers for the purpose of participating in the sport of skiing." RSA 225-A:2, IV. Ski areas are "all passenger tramways and all designated trails and slopes and ski jumps under the control of the alpine and nordic ski area operator and open to the public for recreation or competition." RSA 225-A:2, V. Based upon these provisions, we have held that a "skier" is one who "participates in the sport of skiing." *Sweeney*, 151 N.H. at 242.

In *Sweeney*, we ruled that a patron who was injured while utilizing a snow tube on a track designated solely for snow tubing did not "participate in the sport of skiing" and was not a "skier." *See id.* at 242-43. In that case, we found it significant that the patron was using a snow tube run designated exclusively for that purpose, rather than an alpine or nordic slope or trail. *Id.*

Here, we hold that the decedent was a "skier" under the statute because he used an alpine "slope" or "trail" that was "designated by the [defendants] on trail boards or maps [they] supplied . . . , to be used by skiers for the purpose of participating in the sport of skiing." RSA 225-A:2, IV. The trail map for Loon Mountain depicts the terrain park as a black diamond trail, one of the most difficult on the mountain. As the trial court found, and as the plaintiff conceded at oral argument, the terrain park is used by both alpine skiers and snowboarders. Because the decedent was a "skier," he "participate[d] in the sport of skiing." *See Sweeney*, 151 N.H. at 242.

The plaintiff argues that her son was not a "skier" because he used a snowboard. She asserts that snowboarding and skiing are two "very different sports, with different mechanics and maneuvers." She further observes that the plain language of RSA chapter 225-A, before it was amended in 2005, did not include the words "snowboarding" or "snowboard." Therefore, she reasons, the legislature did not intend the statute to apply to snowboarders.

■ The plaintiff misinterprets RSA chapter 225-A. This chapter does not define a skier as one who uses skis. Rather, it defines a skier as "a person *utilizing the ski area* under the control of a ski area operator *for the purpose of utilizing the ski slopes, trails, jumps or other areas.*" RSA 225-A:2, II (emphasis added). RSA chapter 225-A focuses upon those who *use* the ski area, not upon the means by which they do so. *See Sweeney*, 151 N.H. at 242.

RSA 225-A:1 further evinces this intent. It provides, in pertinent part:

> [I]t shall be the policy of the state of New Hampshire to define the primary areas of responsibility of skiers and *other users* of alpine ... and nordic ... areas, recognizing that the sport of skiing and *other ski area activities* involve risks and hazards which must be assumed as a matter of law by those engaging in such activities, regardless of all safety measures taken by the ski area operators.

(Emphasis added.) Had the legislature intended the scope of the chapter to be as narrow as the plaintiff suggests, it would not have referred to "other users" and "other ski area activities."

The plaintiff contends that the 2005 amendments to RSA chapter 225-A demonstrate that the legislature did not intend the prior version of the chapter, which was last amended in 1978, to apply to snowboarding. In 2005, the legislature amended certain provisions of RSA chapter 225-A to make clear that they pertain to snowboarding, snow tubing and snowshoeing. For instance, the 1978 version of the declaration of policy provision, RSA 225-A:1, referred only to the "sport of skiing." As amended in 2005, it refers to "the sports of skiing, snowboarding, snow tubing and snowshoeing." RSA 225-A:1 (Supp. 2006).

Similarly, the definition of "[s]ki areas" provided in RSA 225-A:2, V referred to "designated trails and slopes and ski jumps," whereas the analogous provision in the amended RSA chapter 225-A, RSA 225-A:2, VII (Supp. 2006), refers to "designated alpine and nordic trails, slopes, freestyle terrain, tubing terrain, and nordic ski jumps." The 2005 amendments also added several new definitions to RSA 225-A:2, including RSA 225-A:2, X (Supp. 2006), which defines "[t]ubing terrain," and RSA 225-A:2, XI (Supp. 2006), which defines "[w]inter sports."

Coming so soon after we decided *Sweeney*, these amendments are "strong evidence" of the legislature's intent with respect to the 1978 version of the act. *See Blue Mountain Forest Ass'n v. Town of Croydon*, 119 N.H. 202, 205 (1979). Where an "amendment [is] enacted soon after controversies [arise] as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act." 1A N. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 22:31, at 380 (6th ed. 2002); *see also Carter v. California Dept. of Veterans Affairs*, 135 P.3d 637, 643 (Cal. 2006); *Bob Zimmerman Ford v. Midwest Automotive I*, 679 N.W.2d 606, 610 (Iowa 2004). In this way, the 2005 amendments clarified, rather than changed, the meaning of the 1978 version of RSA chapter 225-A. *See Blue Mountain Forest Ass'n*, 119 N.H. at 205. Thus, contrary to the plaintiff's assertions, the 2005 amendments support our construction of the 1978 version of RSA chapter 225-A.

The plaintiff also argues that the 2005 amendments could not have "clarified" that RSA chapter 225-A was intended to apply to snowboarding because snowboarding did not exist in 1978. "[L]egislative enactments apply alike to persons, subjects and business[es] within their general purview and scope existent at the time of the enactments and to those coming into existence subsequent to their passage." *Boston & Me. Corp. v. Sprague Energy Corp.*, 151 N.H. 513, 517 (2004). Thus, the relevant inquiry is whether the language of the statute as it existed before the 2005 amendments encompassed snowboarding, not whether this sport existed in 1978.

## A

The plaintiff next asserts that because the jump was man-made, it was not an inherent risk of skiing. *See* RSA 225-A:24, I. She concedes that RSA 225-A:24, I, lists "variations in terrain" as an inherent risk of skiing, but contends that this refers only to variations that occur naturally. The plaintiff is mistaken. "We discern no general intent in RSA 225-A:24 to classify potential obstacles on ski trails based upon . . . whether they are natural or man-made. . . . We note, for instance, that both natural snow and ice conditions and man-made components of lift towers are enumerated as inherent risks." *Rayeski v. Gunstock Area*, 146 N.H. 495, 498 (2001); *see also Lorette v. Peter-Sam Inv. Properties*, 140 N.H. 208, 210-11 (1995) (*Lorette I*) (interpreting similar language in immunity provision pertaining to off-highway recreational vehicles and holding that man-made alterations to land such as excavation pit constitute "variations in terrain").

Further, the plain meaning of the phrase "variations in terrain" includes a jump like that in question. The plain meaning of the word "variation" is a "change in the form, position, state or quality of something." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2533 (unabridged ed. 2002). "Terrain is the physical features of a tract of land." *Lorette I*, 140 N.H. at 211 (quotation omitted). The jump, which the plaintiff admitted at oral argument was made solely of snow, constituted a change in the physical features of the land and thus was a "variation[] in terrain."

## B

The plaintiff next contends there were disputed issues of material fact regarding the cause of the decedent's injuries, which precluded summary judgment. She observes that while she argues that the decedent was injured by the defendants' negligent design, construction or maintenance of the jump, the defendants assert that he was injured by an inherent risk of skiing.

While proximate causation generally is a question of fact, *see Carignan v. N.H. Int'l Speedway, Inc.*, 151 N.H. 409, 414 (2004), under RSA 225-A:24, I, individuals who participate in "the sport of skiing" assume the risk of "variations in terrain" *as a matter of law. See Lorette v. Peter-Sam Inv. Properties*, 142 N.H. 208, 211 (1997) (*Lorette II*) (interpreting immunity provision pertaining to off-highway recreational vehicles). Thus, whether an individual has been injured by an inherent risk is a legal question under RSA 225-A:24, I. *See id.*

■ Having determined that the decedent was injured by an inherent risk of skiing, we necessarily have concluded that he was not injured by the defendants' negligence. *See Rayeski*, 146 N.H. at 500. "[T]he doctrine embodied in RSA 225-A:24 is simply an alternative expression for the proposition that the defendant was not negligent, that is, there was no duty owed or there was no breach of an existing duty." *Id.* at 499 (quotation omitted). Under RSA 225-A:24, I, ski area operators owe no duty to protect patrons from the inherent risks of skiing and thus are immunized from liability for any negligence related to these risks. *See id.* at 497, 499-500. "[A]n injury caused by an inherent risk cannot have been negligently caused because there is no duty to protect against such risks." *Id.* at 499-500. "The categories of injuries caused by an inherent risk of skiing and injuries caused by negligence are mutually exclusive." *Id.* at 499.

Our decision in *Nutbrown v. Mount Cranmore*, 140 N.H. 675 (1996), is instructive. In that case, the plaintiff alleged that he was injured when he left a ski trail, hit an area to the right of the trail and fell down a ravine. *Nutbrown*, 140 N.H. at 683. He asserted that the defendant was liable for these injuries because it "created and maintained a dangerous condition of the ski trails." *Id.* (quotation omitted). Specifically, he claimed that the defendant failed to construct and maintain the ski trails adequately, inadequately channeled skiers, had inadequate safety and risk reduction policies, did not adequately inspect the trails and inadequately trained, supervised and managed its personnel. *Id.* We ruled that *all* of these allegations "suggest[ed] only inherent risks of skiing as the likely causes of the plaintiff's injuries." *Id.* at 684. All of these allegations were therefore barred by RSA 225-A:24, I. *Id.* The only allegation to survive was that the defendant violated its statutory duty to mark the beginning of the trail. *Id.* at 683-84.

In *Lorette II*, 142 N.H. at 212, we ruled that a similar immunity provision, former RSA 215-A:34, II (2000) (repealed 2005), which pertained to off-highway recreation vehicles, immunized defendants not only from their negligence, but also from their reckless conduct. In that case, we held

that former RSA 215-A:34, II immunized a landowner for any claim that he recklessly created, maintained, refused to remedy, or failed to warn of an inherent risk. *Lorette II*, 142 N.H. at 212; *see also Moody v. Continental Paving*, 148 N.H. 592, 593-94 (2002) (plaintiff's claim that defendant acted recklessly "in creating and then failing to warn, inspect, modify, illuminate, supervise or otherwise prevent access to" fifteen-foot wall and "drop off onto a concrete slab" barred by former RSA 215-A:34, II; fifteen-foot drop off was inherent risk of participating in sport). As the plaintiff here has alleged only that the defendants negligently designed, constructed or maintained the jump, we need not resolve in this case whether RSA 225-A:24, I, like former RSA 215-A:34, II, immunizes defendants from their reckless acts. We also need not address whether RSA 225-A:24, I, immunizes ski area operators from their intentional conduct.

██ Here, because we have determined that a jump constitutes a variation in terrain and is therefore an inherent risk of skiing, RSA 225-A:24, I, necessarily bars any claim that the defendants inadequately constructed, designed or maintained the jump; such claims fall within the inherent risks identified by the statute. *See Lorette II*, 142 N.H. at 211-12; *Nutbrown*, 140 N.H. at 683-84.

## C

██ Alternatively, the plaintiff asserts that the defendants are liable for her son's injury because they breached their statutory duty to design, construct and maintain the jump properly. *See* RSA 225-A:23, IV. The plaintiff contends that the word "jump" as used in RSA 225-A:23, IV and elsewhere in the chapter pertains to both nordic jumps, which the defendants describe as "large free-standing ... metal structures," and alpine jumps, such as that at issue, made entirely of snow. We disagree.

RSA 225-A:23, IV provides:

> The operator shall provide a sign in a prominent location at or near the ski jump facility, which sign shall warn the ski jumper that the use of the ski jump is entirely at the ski jumper's own risk. Further, the ski area operator shall be responsible for the design, construction and structural maintenance of all ski jumps.

The use of the phrase "ski jump facility" and the reference to "structural maintenance" is some evidence that the legislature intended this provision to apply to nordic ski jumps, which have "ski jump facilit[ies]" and can be maintained structurally. When we construe RSA 225-A:23, IV in the context of the statutory scheme of which it is a part, *DaimlerChrysler*

*Corp. v. Victoria*, 153 N.H. 664, 666 (2006), this intent becomes more evident.

Other provisions of RSA chapter 225-A demonstrate that the phrase "ski jump" as used in RSA 225-A:23, IV refers only to nordic jumps. In RSA 225-A:1, for instance, the legislature distinguished between alpine and nordic areas. "[A]lpine areas are those used for downhill activities, while nordic areas are those used for cross country activities and ski jumps." *Sweeney*, 151 N.H. at 242; *see* RSA 225-A:1. Also in that provision, the legislature stated that it was state policy to "protect . . . citizens and visitors from unnecessary mechanical hazards in the operation of ski tows, lifts, jumps and tramways" and to ensure that these are subject to "periodic inspections and adjustments." RSA 225-A:1. RSA 225-A:1 further provides that the state "shall register all ski lift devices and ski jumps, establish reasonable standards of design and operational practices and make such independent inspections as may be necessary in carrying out this policy." The references to "mechanical hazards," "periodic inspections and adjustments" and registration make sense only with respect to nordic ski jumps.

We find additional support for this construction of RSA 225-A:23, IV in the 2005 amendments to RSA chapter 225-A. In 2005, the legislature amended RSA 225-A:1 and RSA 225-A:23, IV to add the word "nordic" to the phrase "ski jump." The legislature also added "[n]ordic ski jump" as a new definition to RSA 225-A:2. RSA 225-A:2, IV (Supp. 2006). The legislature defined a nordic ski jump as "a facility constructed for the purpose of nordic ski jumping and built in accordance with appropriate standards and guidelines, and any facilities that are associated with the use or viewing of such a facility." *Id.*

Based upon the above, we conclude that RSA 225-A:23, IV pertains only to nordic jumps. Accordingly, we hold that the trial court did not err when it rejected the plaintiff's contention under RSA 225-A:23, IV.

## II

We now address the plaintiff's CPA claim. The CPA provides, in pertinent part: "[I]t shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." RSA 358-A:2 (Supp. 2006). In her amended complaint, the plaintiff alleged that the defendants violated the CPA by falsely advertising that the terrain park and specifically its jumps were "state of the art" and "safe for the use by patrons for the specific purpose of snowboarding." The trial court granted summary judgment to the defendants on this claim, in part, because the plaintiff failed to submit "any affidavits, depositions, or answers to

interrogatories that set forth the representations she claims were made by the defendants." The record supports this ruling.

The record on appeal contains no advertising by the defendants representing that the terrain park was "state of the art" or "safe for . . . snowboarding." In her brief, the plaintiff points to pages 72, 82 and 158-59 of her appendix. Page 72 purports to be a print-out from a website in which the defendants tell patrons that the terrain park is "[f]un." Page 82 is a brochure that warns patrons that while "[g]uest safety is a fundamental value" of the defendants, "[t]he most important factor in safety remains the manner in which our guests participate in the sport." This brochure specifically tells patrons that under New Hampshire law, skiers and riders "accept the dangers inherent in the sport." On pages 158 and 159 is another purported print-out from a website that states that the terrain park is open and "is the place to be." On these pages, the defendants specifically warn prospective patrons that they should "not attempt any features unless [they] have sufficient ability and experience to do so safely."

Based upon our review of the record submitted on appeal, we find no error in the trial court's determination that the plaintiff "has failed to present evidence to substantiate her claim." Accordingly, we uphold its grant of summary judgment to the defendants upon her CPA claim.

To the extent that the plaintiff asserts that the trial court erred by granting the defendants' motion after staying their obligation to answer certain discovery requests, we observe that she has failed to provide a record sufficient for our review of this issue. It is the burden of the appealing party to provide this court with a record sufficient to decide her issues on appeal. *See Rix v. Kinderworks Corp.*, 136 N.H. 548, 553 (1992); *see also* SUP. CT. R. 13. Although the plaintiff argues that the discovery she sought was "critical" to her CPA claim, she has failed to provide copies of her requests for our review.

*Affirmed.*

BRODERICK, C.J., and DUGGAN and GALWAY, JJ., concurred.