**Paul LANZILLA and Maryellen Lanzilla, Plaintiffs,**

v.

**WATERVILLE VALLEY SKI RESORT, INC., Defendant.**

**Civil Action No. 06–10315–WGY.**

United States District Court, D. Massachusetts.

Oct. 12, 2007.

Osler L. Peterson, Freeto, Peterson & Scoll, Newton, MA, for Plaintiffs.

William L. Keville, Melick, Porter & Shea, LLP, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER*

WILLIAM G. YOUNG, District Judge.

## I. INTRODUCTION

This case involves a claim by Paul Lanzilla ("Lanzilla") and his wife Maryellen Lanzilla (collectively the "Lanzillas") against Waterville Valley Ski Resort, Inc. ("Waterville") for negligent maintenance and operation of Waterville's tubing terrain and for loss of consortium stemming from a serious injury suffered by Paul Lanzilla.

The Lanzillas have properly invoked federal diversity jurisdiction in this action, and this Court has a strong obligation to provide a federal forum for adjudication of these claims. The resolution of these claims involves a complex relationship between New Hampshire statutory law and interpretative New Hampshire Supreme Court case law. While this Court originally considered certification to the Supreme Court of New Hampshire as to the narrow but potentially determinative issue of stat-

utory immunity, further reflection on the controlling state law has convinced this Court that no question of controlling state law exists.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The following facts appear on the record without dispute. All reasonable inferences have been drawn in favor of the Lanzillas. On February 19, 2004, the Lanzillas arrived at Waterville's ski resort with their three children, including their five-year-old daughter Kathleen. Pls. L.R. 56.1 Counter Stat. of Mat. Facts [Doc. No. 12] ("Pls. 56.1 C–Stat.") ¶ 2. Waterville did not provide the beginner ski lessons that Kathleen required. *Id.* Waterville employees suggested that Lanzilla take Kathleen tubing. *Id.*

The tube slope at Waterville curved around the woods and prevented an observer at the top of the slope from clearly viewing the bottom. *Id.* ¶¶ 14–15. Metal poles held snow fencing that delineated the edge of the tubing area. *See id.* ¶ 17. The snow tubes were piled at the bottom of the slope. *Id.* ¶¶ 4–5. Patrons would take a snow tube, walk to the top of the slope, and then ride the tube back to the bottom. *See id.* ¶¶ 5, 10–12. The tube slope did not separate the area for walking up the hill from the area where patrons rode the tubes down. *Id.* ¶ 10.

Prior to using the tubing slope, Lanzilla spoke to a Waterville employee who worked at the tubing slope. *Id.* ¶¶ 5–6. The employee explained the existence of a $6.00 per hour rental fee and had Lanzilla sign a document captioned "Acknowledgment of Risks & Hazards Liability Release & Agreement Not to Sue." *Id.* ¶¶ 6–7.

Lanzilla and Kathleen proceeded to take a few tubing runs. *Id.* ¶ 11. After a break, they decided to take another run. *Id.* ¶¶ 12–13. Lanzilla had Kathleen in his lap when they started down the slope. *Id.* ¶ 13. After coming around a curve, they came upon an adult walking up the middle of the slope pulling two tubes filled with children. *Id.* ¶ 15. Lanzilla swerved to avoid hitting the people and made contact with the slope's embankment. *Id.* ¶ 16. The contact sent the tube into the air. *Id.* Lanzilla's left leg struck a metal pole that held the snow fencing, and the impact shattered his tibia and fibula. *Id.* ¶ 17.

On February 17, 2006, Lanzilla initiated this action alleging that his injuries were caused by the negligent operation and maintenance of Waterville's tubing slope. On June 6, 2006, Lanzilla amended his complaint to add his wife, Maryellen Lanzilla, as a plaintiff and to assert a claim by her for loss of consortium. The Lanzillas filed a second amended complaint on July 12, 2006. Jurisdiction over these claims in federal court is proper due to diversity of citizenship.

On May 31, 2007, Waterville moved for summary judgment. This Court heard oral argument on this motion on July 18, 2007. Since the case revealed a potentially determinative but unsettled question of New Hampshire law, the Court took the matter under advisement and ordered the Lanzillas to file a letter as to whether the Supreme Court for the State of New Hampshire allowed certification of such questions and, if so, whether this Court ought do so.

The Lanzillas filed a letter informing the Court that the Supreme Court of New Hampshire allows for certification of questions of law. Pls. Letter [Doc. No. 16] at 1–2. Further, the Lanzillas requested that this Court so certify the determinative question of law. *Id.* at 1. Waterville also filed a letter on this issue. Def. Letter [Doc. No. 15] at 1–2. Waterville conceded that certification is available, but argued

that certification of this particular question would be improper. *Id.* For the reasons set forth below, this Court agrees with Waterville.

## III. DISCUSSION

■ On February 19, 2004, the date when Lanzilla suffered his injury, New Hampshire state law precluded claims brought by those injured in "the sport of skiing." N.H.Rev.Stat. Ann. § 225–A:24(I) (1978). The Supreme Court of New Hampshire, in *Sweeney v. Ragged Mountain Ski Area, Inc.*, 151 N.H. 239, 855 A.2d 427 (2004), interpreted this statutory phrase while adjudicating whether immunity ought extend to claims brought by a plaintiff utilizing a snow tube slope for snow tubing. *Id.* at 242–43, 855 A.2d 427. The court did not specifically define the phrase, but held that an essential characteristic included the utilization of "alpine" and "nordic" areas of the ski area. *Id.* at 242, 855 A.2d 427. The court applied these defining characteristics to the claims brought by the snow tubing plaintiff and declined to extend statutory immunity to the defendant. *Id.* at 243, 855 A.2d 427. The court explained that it could not conclude that the New Hampshire legislature sought to include the sport of snow tubing within the coverage of the statutory scheme. *Id.*

The New Hampshire legislature swiftly responded to the *Sweeney* decision in 2005 by amending the statute to substitute the language "skiing, snowboarding, **snow tubing,** and snowshoeing," for "skiing as a sport" as activities from which ski area operators would be immunized if injuries resulted. N.H.Rev.Stat. Ann. § 225–A:24 (2005) (emphasis added). Additionally, the amendment clarified the term "ski areas" to include **"tubing terrain."** *Id.* § 225–A:2(VIII) (emphasis added).

■ It is a general and time-tested principal that, absent a clear showing of legislative intent to the contrary, a substantive change in statutory law does not enjoy retroactive effect. *See In re Donovan*, 152 N.H. 55, 63, 871 A.2d 30 (2005); *Cowan v. Tyrolean Ski Area, Inc.*, 127 N.H. 397, 403, 506 A.2d 690 (1985). In this case, in light of the *Sweeney* decision and without evidence of legislative intent that the 2005 statutory amendment was to have retroactive effect, it would be clear that Waterville could not seek immunity under the New Hampshire statute.

The Supreme Court of New Hampshire has, however, specifically addressed the issue of retroactivity. In *Cecere v. Loon Mountain Recreation Corp.*, 155 N.H. 289, 923 A.2d 198 (2007), the court addressed the retroactive effect of the 2005 amendments with respect to fatal injuries suffered by a person snowboarding on the defendant's ski mountain. *Id.* at 203–04. The court held that the New Hampshire legislature's swift reaction to its decision in *Sweeney* constituted "strong evidence" of the legislature's true intent relative to the 1978 version. *Id.* at 204. Specifically, the court stated that the 2005 amendments to the terms "sport of skiing" and "ski areas" "clarified, rather than changed, the meaning of the 1978 version." *Id.* The amendments referenced added "snow tubing" as a sport and "tubing terrain" as an area of activity that were covered under the immunity statute. *Id.*

As a result of the *Cecere* decision, the Supreme Court of New Hampshire has specifically held that the legislative intent of the immunity statute in 1978 encompassed snow-tubing injuries and injuries sustained on tubing terrain. *See id.* This definitively places Lanzilla's snow-tubing injury in 2004 within the coverage of the statute. As a result, Lanzilla is precluded from advancing his claim against Water-

ville. Likewise, Maryellen Lanzilla's derivative loss of consortium claim must fail.

## IV. CONCLUSION

Certification of a state law question is appropriate when the answer is determinative and no controlling state decisions exist. *See U.S. Steel v. M. DeMatteo Constr. Co.*, 315 F.3d 43, 53–54 (1st Cir.2002). When properly employed, certification is a tool that builds cooperative federalism and prevents the unnecessary expenditure of precious judicial resources. Neither goal would be served by certification in this case. After fully considering the issue of immunity, this Court holds that controlling state law exists and must be followed.

Accordingly, Waterville's Motion for Summary Judgment [Docket No. 10] is ALLOWED.

SO ORDERED.