Merrimack
No. 2008-650

HELEN MARTIN & a.

v.

PAT'S PEAK, INC.

Argued: February 18, 2009
Opinion Issued: May 21, 2009

*Gibson & Behman, P.C.*, of Manchester (*Christopher W. Driscoll* and *Daniel J. Shanahan* on the brief, and *Mr. Shanahan* orally), for the plaintiffs.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Thomas Quarles, Jr.* and *Leigh S. Willey* on the brief, and *Ms. Willey* orally), for the defendant.

HICKS, J. This case comes before us on an interlocutory transfer without ruling from the Superior Court (*Mangones*, J.). *See* SUP. CT. R. 9. The question is whether the plaintiffs, Helen Martin and her husband Michael Martin, may maintain negligence and loss of consortium claims against the defendant, Pat's Peak, Inc. (Pat's Peak), for injuries Helen Martin sustained while snow tubing at the Pat's Peak's ski area prior to legislative amendments to RSA chapter 225-A (2000 & Supp. 2008) that classify snow tubers as skiers under the statute. *See* RSA 225-A:2, II (Supp. 2008). We hold that the Martins' claims are not barred.

The following relevant facts are recited in the parties' joint interlocutory transfer statement or appear in the record. Pat's Peak owns and operates a ski area in Henniker known as "Pat's Peak." On February 18, 2004, Helen Martin was injured while snow tubing at the Pat's Peak ski area. By writ dated February 15, 2007, the plaintiffs instituted this action against the defendant, alleging that Helen Martin's injuries:

> were the result of the Defendant's negligence in that it permitted a defective and unreasonably dangerous condition to exist on its tubing park, failed to maintain its tubing park in a safe condition and/or failed to repair the tubing park when it knew or should have known, in the exercise of reasonable care, the tubing park was defective, and/or failed to warn of the defective condition.

Michael Martin brought a claim for loss of consortium.

Pat's Peak moved to dismiss, arguing that the action is barred by RSA 225-A:24 (2000) (amended 2005) and by the statute of limitations contained in RSA 225-A:25, IV (2000) (amended 2005). At the time Helen Martin was injured, RSA 225-A:24, I, provided:

> Each person who participates in the sport of skiing accepts as a matter of law, the dangers inherent in the sport, and to that extent may not maintain an action against the operator for any injuries which result from such inherent risks, dangers, or hazards. The categories of such risks, hazards or dangers which the skier or passenger assumes as a matter of law include but are not limited to the following: variations in terrain, surface or subsurface snow or ice conditions; bare spots; rocks, trees, stumps and other forms of forest growth or debris; lift towers and components thereof (all of the foregoing whether above or below snow surface); pole lines and plainly marked or visible snow making equipment; collisions with other skiers or other persons or with any of the categories included in this paragraph.

RSA 225-A:24, I (2000). Until its amendment in 2005, this paragraph had remained unchanged since 1978 and is therefore sometimes referred to as the 1978 version of the statute. At all relevant times, the statute of limitations in RSA 225-A:25, IV has provided, in pertinent part, that "[n]o action shall be maintained against any operator for injuries to any skier or passenger unless the same is commenced within 2 years from the time of injury provided, however, that as a condition precedent thereof the operator shall be notified by certified return receipt mail within 90 days of said injury." RSA 225-A:25, IV (Supp. 2008).

The Martins opposed the motion to dismiss, arguing that Helen Martin was not a "skier" within the meaning of the applicable statutes. They relied upon *Sweeney v. Ragged Mt. Ski Area*, 151 N.H. 239 (2004), in which we held that a person "utilizing a snow tube run designated exclusively for snow tubing" did not participate in the sport of skiing for purposes of RSA 225-A:24, I. *Sweeney*, 151 N.H. at 242-43.

Shortly after the *Sweeney* decision, in 2005, "the legislature amended certain provisions of RSA chapter 225-A to make clear that they pertain to snowboarding, snow tubing and snowshoeing." *Cecere v. Loon Mt. Recreation Corp.*, 155 N.H. 289, 293 (2007); *see* Laws 2005, ch. 145. As the incident from which *Cecere* arose occurred prior to these amendments, the 1978 version of the statute, rather than the amended version, applied. Nevertheless, we noted that the 2005 amendments, "[c]oming so soon after we decided *Sweeney*," are "strong evidence of the legislature's intent with

respect to the 1978 version of the act." *Cecere*, 155 N.H. at 293 (quotation omitted). We therefore concluded that the 2005 amendments supported our holding that a snowboarder utilizing an alpine slope or trail is a "skier" under the 1978 version of the statute. *Id.* at 292.

In its order on the motion to dismiss, the trial court noted:

> *Sweeney* constitutes direct case law precedent that snow tubing would not be subject to the immunity provisions of RSA 225-A. However, . . . the analysis . . . in *Cecere* also may be applicable to the present claims. . . . An argument can therefore be made that the New Hampshire legislature had originally intended to grant immunity to activities beyond simply the "sport of skiing" and to encompass snow tubing.

The trial court therefore granted an interlocutory transfer without ruling of the following questions:

> Whether RSA 225-A applies to and bars Plaintiffs' claims because Helen Martin's injuries were the result of risks inherent in the sport of "skiing," as that term is defined in RSA 225-A (1978) [*sic*] and applicable case law? Whether the two (2) year statute of limitations under the Ski Statute RSA 225-A (1978) [*sic*] and (2005) [*sic*] or New Hampshire's general three (3) year statute of limitations, RSA 508:4 applies to the Plaintiffs' claims?

We will address the questions in turn.

The Martins contend that the 1978 version of RSA 225-A:24, I, does not bar their claims because Helen Martin was not a "skier" within the meaning of the statute and her injuries were not caused by risks inherent in the sport of skiing. Thus, as the trial court recognized, the first question before us is precisely the one presented in *Sweeney*: "whether RSA 225-A:24, I, grants immunity to ski area operators against claims for injuries brought by snow tubers." *Sweeney*, 151 N.H. at 241.

> We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme.

*Cecere*, 155 N.H. at 291 (citations omitted).

■ We noted in *Sweeney* that RSA 225-A:24, is "an immunity provision for ski area operators[,] . . . intended to supersede and replace a skier's

common law remedies for risks inherent in the sport of skiing." *Sweeney*, 151 N.H. at 242 (quotation and italics omitted). Thus, we interpret the statute in accordance with the principle that "immunity provisions barring the common law right to recover are to be strictly construed." *Id.* at 241. "If such a right is to be taken away, it must be noted clearly by the legislature." *Id.* (quotation omitted).

As previously noted, the 1978 version of RSA 225-A:24, I, bars persons "participat[ing] in the sport of skiing" from "maintain[ing] an action against the [ski area] operator for any injuries which result from . . . risks, dangers, or hazards" that are "inherent in the sport." RSA 225-A:24, I (2000). Because RSA chapter 225-A does not define the phrase "sport of skiing," we looked in *Sweeney* "to other provisions of the statutory scheme for guidance"; in particular, the definition of "skier" in RSA 225-A:2, II (2000) (amended 2005). *Sweeney*, 151 N.H. at 242. We also looked to the statute's declaration of policy which, in pertinent part, declared it to be " 'the policy of the state of New Hampshire to define the primary areas of responsibility of *skiers and other users of alpine (downhill) and nordic (cross country and ski jumps) areas*, recognizing that the sport of skiing and other ski area activities involve risks and hazards' " which participants must assume as a matter of law. *Sweeney*, 151 N.H. at 242 (quoting RSA 225-A:1 (2000) (amended 2005)). We determined that "[t]his provision indicates that the focus of the statutory scheme is upon those who utilize alpine and nordic areas." *Id.* We therefore concluded that because the plaintiff "was not utilizing an alpine or nordic slope," but rather "was utilizing a snow tube run designated exclusively for snow tubing," she did not " 'participat[e] in the sport of skiing' as intended by the legislature in RSA 225-A:24, I." *Id.* at 242-43.

The Martins contend that because Helen Martin "was using a run designated exclusively for snow tubing, which was designed and constructed by Pat's Peak, rather than an alpine or nordic trail, and snow tubing is not remotely similar to the sport of skiing, [she] is not a 'skier' under the . . . 1978 Ski Statute." Since *Sweeney* is directly on point on this issue, we must agree with the Martins unless *Sweeney* is no longer good law.

The suggestion that *Sweeney* may not be controlling arises from comments we made in *Cecere* regarding the 2005 amendments to RSA chapter 225-A. After noting that the amendments to certain provisions "make clear that they pertain to snowboarding, snow tubing and snowshoeing," *Cecere*, 155 N.H. at 293, we stated:

> Coming so soon after we decided *Sweeney*, these amendments are "strong evidence" of the legislature's intent with respect to the 1978 version of the act. Where an amendment is enacted soon

after controversies arise as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act. In this way, the 2005 amendments clarified, rather than changed, the meaning of the 1978 version of RSA chapter 225-A.

*Cecere*, 155 N.H. at 293 (quotation, citations and brackets omitted).

We did not use this analysis, however, in reaching our holding in *Cecere*. Rather, it served to reject the plaintiff's contention that "the 2005 amendments to RSA chapter 225-A demonstrate that the legislature did not intend the [1978] version of the chapter . . . to apply to snowboarding." *Id.* Thus, we determined that rather than intending a substantive change in the statute, the legislature sought to clarify its intent to include the activities of snowboarding, snow tubing and snowshoeing within the statute's ambit. Nevertheless, nothing in this passage from *Cecere* is inconsistent with our holding in *Sweeney* that the "intent to extinguish the common law claims of snow tubers injured on a track designated solely for snow tubing" was not "clearly expresse[d]" in the 1978 version of the statute. *Sweeney*, 151 N.H. at 243. In other words, clarification of the legislature's intent — admittedly, its original intent — was necessary, and was accomplished by the 2005 amendments.

 The amendments do not, however, apply retrospectively to bar the Martins' claims. *But see Lanzilla v. Waterville Valley Ski Resort, Inc.*, 517 F. Supp. 2d 578, 580 (D. Mass. 2007) (reaching contrary conclusion, based upon *Cecere*). Part I, Article 23 of the New Hampshire Constitution prohibits retrospective laws "either for the decision of civil causes, or the punishment of offenses." N.H. CONST. pt. I, art. 23. We have therefore held that "[t]he legislature . . . cannot constitutionally enact laws that affect existing causes of action, regardless of whether suit upon that action has not been filed." *Lozier v. Brown Company*, 121 N.H. 67, 70 (1981), *limited by In re Estate of Fontaine*, 128 N.H. 695, 699 (1986). In *Lozier*, the plaintiff had a cause of action for wrongful death at the time her husband died. Subsequently, the legislature amended the workmen's compensation statute, "[t]he clear effect of [which] was to foreclose such actions entirely." *Id.* at 71. We held that the amendments could not "be applied retroactively to bar the plaintiff's wrongful death action even though she did not file suit until after the effective date of the amendment." *Id.* Similarly, the 2005 amendments to RSA chapter 225-A cannot be applied retrospectively to substantively bar the Martins' previously-accrued claims.

 This conclusion is not inconsistent with *Cecere*, as we did not retrospectively apply the 2005 amendments in that case. Rather, we applied

precisely the construction of the statute set forth in *Sweeney* and held that the decedent snowboarder "was a 'skier' under the statute because he used an alpine 'slope' or 'trail' that was 'designated by the [defendants] on trail boards or maps [they] supplied . . . , to be used by skiers for the purpose of participating in the sport of skiing.'" *Cecere*, 155 N.H. at 292 (quoting RSA 225-A:2, IV). Thus, neither *Cecere* nor the 2005 amendments undermine *Sweeney's* validity and it remains controlling in this case. Accordingly, we hold that Helen Martin was neither a "skier," RSA 225-A:2, IV, nor did she "participate in the sport of skiing," RSA 225-A:24, I, at the time of her injuries, and therefore RSA 225-A:24, I, does not bar the Martins' claims.

We now turn to whether this action is governed by the two-year statute of limitations in RSA 225-A:25, IV or the general three-year statute of limitations in RSA 508:4, I (1997). Since Helen Martin was injured on February 18, 2004, the limitations period of RSA 225-A:25, IV expired on February 18, 2006. Thus, if that statute is applicable, her action filed on February 15, 2007, would be time-barred. If, on the other hand, RSA 508:4 applies, the suit was timely filed.

■ RSA 508:1 (1997) states that "[t]he provisions of this chapter shall not apply to cases in which a different time is limited by statute." The purpose of this section "is to make RSA chapter 508 the source for 'catch-all' statutes of limitations and tolling provisions, and to ensure that more specific statutes found elsewhere remain controlling." *Doggett v. Town of North Hampton*, 138 N.H. 744, 747 (1994).

The Martins contend that RSA 225-A:25, IV is not applicable because Helen Martin was not a " 'skier' and her snow tubing claim does not fall within the 1978 Ski Statute." At the time Helen Martin was injured, that was the case, as we held above that she was not a "skier" under the 1978 version of the statute. Pat's Peak counters, however, that because this suit was not commenced until after the 2005 amendments became effective, the amended definition of skier applies for purposes of applying the statute of limitations. Pat's Peak argues that application of the 2005 amendments to the Martins via the statute of limitations is permissible because: (1) statutes of limitations are procedural in nature; and (2) the prohibition on retrospective laws does not apply to procedural statutes.

■ The legal principles Pat's Peak cites are correct. We have, for instance, "recognize[d] the general rule that statutes of limitation are procedural limitations upon a party's right to sue and, as such, affect only the remedy and not the substantive rights of the litigants." *Guerin v. N.H. Catholic Charities*, 120 N.H. 501, 504 (1980). We have also determined that retrospective application of a statute of limitations does not violate the prohibition of Part I, Article 23 of the New Hampshire Constitution under

certain circumstances. Specifically, we have noted that "a statute which . . . reduces or enlarges the time within which [an] action must be prosecuted[] is not within the prohibition of the Constitution as a retrospective law, so long as it leaves to the party, practically, a suitable remedy to enforce his rights." *Willard v. Harvey*, 24 N.H. 344, 353 (1852). Accordingly, the legislature may change the statute of limitations at its pleasure, regardless of "whether the time of limitation has already expired in part or not, provided a sufficient time remains before any claim in question becomes barred, to enable the claimant by the use of reasonable diligence to save his claim by a suit." *Id.* at 355.

■ Nevertheless, Pat's Peak's argument addresses only half of the question before us. Before determining whether the legislature can constitutionally apply a statute retrospectively, we must determine, as a matter of statutory construction, whether it intended to do so. *See Eldridge v. Eldridge*, 136 N.H. 611, 613 (1993). "When the legislature is silent as to whether a statute should apply prospectively or retrospectively," we generally employ a presumption of statutory interpretation that "turns on whether the statute affects the parties' substantive or procedural rights." *Appeal of Wal-Mart Stores*, 145 N.H. 635, 638 (2000) (quotation omitted).

In the instant case, however, the issue is not simply whether an amended statute or its prior version applies, but whether a statute, previously inapplicable to the plaintiffs, became applicable through a change in the definition of a term employed therein, which amended definition, moreover, could not substantively be applied to the plaintiffs. Accordingly, as our goal is to determine the legislature's intent, we first, in accordance with general principles of statutory construction, "examine the language of the statute." *Cecere*, 155 N.H. at 291.

As previously noted, RSA 225-A:25, IV provides, in pertinent part, that "[n]o action shall be maintained against any operator for injuries to any skier or passenger unless the same is commenced within 2 years from the time of injury." RSA 225-A:25, IV (Supp. 2008). Conceding that the legislature could shorten the limitations period applicable to the plaintiffs if it so chose, the question before us is whether, by amending the definition of "skier," it evinced the intent to do so. We conclude that it did not.

■ RSA 225-A:25, IV limits the time within which an action for "injuries to any skier" may be maintained to "2 years from the time of injury." Thus the legislature defined the action to which the limitations period applied, and set its time for commencement, though reference to certain injuries; namely, injuries to a skier. Pat's Peak's contention that RSA 225-A:25, IV applies to the Martins presumes that the legislature intended to redefine the cause of action to which that statute relates, after the cause of action's

accrual, by redefining the class of persons who sustained injury, after the injury occurred. This somewhat convoluted construction, however, is not readily apparent in the plain language of RSA 225-A:25, IV. Rather, the more likely construction of that statute is that the legislature intended "injuries to any skier" to be interpreted as a unitary phrase, tying the identity of the injured party as a "skier" to the time of injury. Since Helen Martin was not a "skier" within the statutory definition at the time she sustained the injuries complained of, RSA 225-A:25, IV, even as in force at the time the Martins filed suit, does not apply to their cause of action. Accordingly, RSA 508:4 applies, and the action is not time-barred.

*Remanded.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.